STATE of North Dakota, Plaintiff and Appellee,

v.

Janet SCHULER, Defendant and Appellant.

Cr. No. 542.

Supreme Court of North Dakota.

June 11, 1976.

Benjamin C. Pulkrabek, Mandan, for appellant.

Rolf P. Sletten, Asst. State's Atty., Bismarck, for appellee.

PEDERSON, Justice.

This is an appeal from two convictions: (1) failure to appear and (2) being in actual physical control of a motor vehicle while under the influence of alcohol. We affirm both convictions. Previously, in *State v. Schuler*, 236 N.W.2d 631 (N.D.1975), we held that Miss Schuler was not entitled to release pending this appeal.

On the evening of July 4, 1975, a Burleigh County deputy sheriff was patrolling an area northeast of the city of Bismarck. At an intersection of a paved and gravel road, he discovered an automobile positioned on the northeast corner of the intersection. The rear end of the automobile was in the ditch and the front end was on the road.

The deputy found the vehicle occupied by a woman (Janet Schuler) and a child approximately three years of age. The deputy received no answer when he asked Miss Schuler what the problem was. After repeated questioning her only response was to tell the deputy to go away as he was scaring the child. As both occupants were sweating profusely, the deputy asked if he could remove the child to his car. In response Miss Schuler put the child on her lap and clutched it tightly. Unable to reach her verbally, the deputy called the North Dakota Highway Patrol for assistance. After the highway patrolman arrived both officers were able to remove the child and Miss Schuler from the automobile. Miss Schuler was unable to walk without assistance, and the officers noted that her speech was slurred and profane and that there was a strong odor of alcohol about her. Upon searching the automobile the patrolman found a six-pack of beer with two cans missing.

Miss Schuler was taken to the Burleigh County jail and was issued a citation for being in actual physical control of a motor vehicle while under the influence of alcohol. At the bottom of the citation is a promise to appear, which the deputy asked Miss Schuler to sign but she refused. The deputy then instructed the jailer not to release Miss Schuler until she had signed the promise to appear and the date for her appearance had been noted on the form. Miss Schuler was released later that evening.

Miss Schuler failed to appear in court on July 9, 1975, the time indicated on the promise to appear. An arrest warrant and complaint were issued on September 19 and she was thereafter arrested and convicted, without a jury, by the Burleigh County Court of Increased Jurisdiction.

At the trial the deputy testified that the automobile was high-centered and could not be moved. The patrolman, however, testified that the automobile could have been backed up by rocking it.

Miss Schuler argues, on appeal, that when she was arrested her motor vehicle was in such a position that it could not move itself and, therefore, it was not a motor vehicle as defined by North Dakota law.

Section 39–01–01(32), NDCC, defines a motor vehicle as "every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails." The same section, at subsection 72, defines a vehicle as "every device in, upon, or by which any person or property may be transported or drawn upon a public highway, except devices moved by human power or used exclusively upon stationary rails or tracks."

Appellant's theory that a motor vehicle that is high-centered is no longer a motor

vehicle is a novel one. It is, however, without merit and not significant to the problem at hand.

In *State v. Fuchs,* 219 N.W.2d 842, 844 (N.D.1974), we quoted with approval from *State v. Eckert,* 186 Neb. 134, 181 N.W.2d 264 (1970), where the Nebraska Supreme Court held, at syllabus 2:

> "In a prosecution for operating a motor vehicle while under the influence of intoxicating liquor, the operation of the motor vehicle is an element of the offense and may be established by circumstantial evidence."

■ The appellant attempts to distinguish *Fuchs* on the facts, but the principle that operation of a motor vehicle can be established by circumstantial evidence applies equally here where the question is whether the defendant was in control of the motor vehicle.

■ There was more than sufficient evidence to support a conclusion that Miss Schuler was in actual physical control of her automobile at the time she was found. She was sitting behind the steering wheel, the keys were in the ignition and turned to the "on" position, and the transmission was in the drive position.

Section 39–08–01, NDCC, states:

> "1. No person shall drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if:
> "a. * * *
> "b. He is under the influence of intoxicating liquor; * * * *"

■ Although this section does not distinguish between the two offenses, the law does recognize the greater severity of the driving offense.[1] The purpose of the "actual physical control" offense is a preventive measure.

In *Hughes v. State,* Okl.Cr., 535 P.2d 1023, 1024 (1975), the Oklahoma Court of Criminal Appeals held that there was suffi-cient evidence for the finding of actual physical control of a motor vehicle where the defendant was found slumped and unconscious in the driver's seat of an illegally parked vehicle with the key in the ignition. In pointing out the rationale behind the offense the court stated:

> "It is our opinion that the legislature, in making it a crime to be in 'actual physical control of a motor vehicle while under the influence of intoxicating liquor,' intended to enable the drunken driver to be apprehended before he strikes. As was stated in the case of *State v. Harold,* 74 Ariz. 210, 246 P.2d 178 (1952):
>
> " ' . . . It appears to us to be even more important for the legislature to prevent operators of cars who are under the influence of intoxicating liquors or who are at the time driving recklessly and in wilful and wanton disregard for the safety of persons or property, from entering upon the highways and into the stream of traffic than to permit them to enter thereon and after a tragic accident has happened to punish them for maiming or causing the death of those who are lawfully in the use of such highways.
> . . . '
>
> "We believe that an intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than where an intoxicated person is actually driving a vehicle, but it does exist."

*Hughes v. State,* 535 P.2d 1024.

■ There was sufficient evidence, hereinbefore described, for the trial court to conclude that Miss Schuler was intoxicated, both at the time she drove her car into its high-centered position and thereafter as she remained in control thereof. Both officers, who have had experience with people who were subsequently found to have been under the influence of alcohol, were of the

---

1. See Section 39–06.1–10(3)(b) (5 & 6), NDCC, for the comparative points entered against the driving record of the offender.

opinion that Miss Schuler was under the influence.

The appellant argues that the evidence is not inconsistent with a hypothesis of Miss Schuler's innocence and, as the State had no direct proof of (1) how the car reached its position, (2) who drove the car there, (3) how long the car had been there before the deputy discovered it, or (4) whether or not Miss Schuler drank any of the alcoholic beverage found in the vehicle after it became stuck, the circumstantial evidence should not be interpreted as pointing toward her guilt. In support of this the appellant cites a 1955 Wisconsin case, *State v. Hall,* 271 Wis. 450, 73 N.W.2d 585, which states that if circumstantial evidence can be viewed as establishing both guilt and innocence, it will not be sufficient without corroborating evidence to establish it to a reasonable certainty. The North Dakota law on this point is set out in *State v. Allen,* 237 N.W.2d 154, 161 (N.D.1975), where we stated:

> "We have noted the different perspectives of the trial court and the appellate court as to circumstantial evidence:
>
> > " 'In *State v. Miller,* 202 N.W.2d 673 (N.D.1972); *State v. Champagne,* 198 N.W.2d 218 (N.D.1972), and *State v. Carroll,* 123 N.W.2d 659 (N.D.1963), we pointed out that the rule as to circumstantial evidence, at the trial level, is that such evidence must be conclusive and must exclude every reasonable hypothesis of innocence, but at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction.' *State v. Kaloustian,* 212 N.W.2d 843, 845 (N.D. 1973); *accord, State v. Fuchs,* 219 N.W.2d 842, 846 (N.D.1974); *State v. Neset,* 216 N.W.2d 285, 287 (N.D.1974); and *State v. Steele,* 211 N.W.2d 855, 870 (N.D.1973)."

█ It is the trial court's role to weigh all the evidence in determining guilt or innocence and we will not reverse its decision unless the record presents no substantial evidence to support the verdict. Viewing the entire body of evidence, we find it was sufficient for the trial court to find that Miss Schuler was guilty of the offense as charged.

█ The second issue that Miss Schuler presents is that the testimony and evidence produced during the trial was insufficient to convict her for failure to appear. She contends that since the State did not produce a witness who saw her sign the promise to appear, it failed to meet its burden of proof required by law. The burden of proof to be met at the trial court level was that of establishing guilt beyond a reasonable doubt. This burden could be met by the State without an eyewitness account of Miss Schuler's signing.

The State produced testimony by the deputy stating that when he delivered Miss Schuler to the Burleigh County jail he instructed the jailer not to release Miss Schuler until she had signed the promise to appear. There was also testimony that the Burleigh County sheriff's department, by whom the jailer is employed, has a policy of not releasing offenders in like situations, unless there is a magistrate available, until they have signed the promise to appear with the date of the court appearance thereon. It was shown that Miss Schuler was released. The citation with the promise to appear signed with the name of Janet Schuler was introduced, along with a piece of paper with Miss Schuler's signature on it for the court's comparison.

The appellant objected to the admission of these last two items, labeled respectively State's Exhibits Nos. 1 and 2, but on appeal Miss Schuler does not question the admissibility of these exhibits but points to the fact that the court did not expressly state that these exhibits were received into evidence. The appellant contends that it was the State's responsibility to pursue a ruling from the court. She cites *State v. Johnson,* 231 N.W.2d 180 (N.D.1975), as supporting her view. In *Johnson* the trial judge sustained the defendant's objection but failed to rule on his request that the objectionable

testimony be stricken from the record and that the jury be asked to disregard it. This court ruled that by failing to urge the judge to strike the testimony the defendant had failed to pursue his remedy and could not raise that issue on appeal.

In the present case, when the appellant objected to the exhibits, the court declared that it would take the objection under advisement but never formally ruled on the objection. If it was anyone's duty to pursue a ruling, it was the duty of the one who would be benefited by the ruling. In absence of a request for a ruling, a failure to rule on an objection is not error. 88 C.J.S. Trial, § 145, at 288.

Miss Schuler had a right to insist on a ruling, without courting contempt, and, having declined to do so, the court was justified in presuming that she had waived her objection. The burden of demanding a ruling on objections to offered testimony rests upon the one desiring the ruling. *Shover v. Iowa Lutheran Hospital,* 252 Iowa 706, 107 N.W.2d 85 (1961); *Dougherty v. Sioux City,* 246 Iowa 171, 66 N.W.2d 275 (1954); 4 C.J.S. Appeal & Error, § 321 c., at 1024–1025, § 321 f., at 1027.

In *State v. Hart,* 417 S.W.2d 193, 195 (Mo.1967), the Missouri Supreme Court quoted from 53 Am.Jur. Trial, § 143, at 127–128, in stating:

"'If when inadmissible evidence is offered the party against whom such evidence is offered * * * fails * * * to insist upon a ruling on an objection of such evidence * * * he is considered to have waived whatever objection he may have had thereto, and the evidence is in the record for consideration the same as any other evidence.'"

Considering all the evidence, including the State's Exhibits Nos. 1 and 2, we find there was sufficient evidence for the trial court to find Miss Schuler guilty of failure to appear as charged.

Judgment is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VOGEL, JJ., concur.