STATE of North Dakota, Plaintiff and Appellee,

v.

Gerald A. GHYLIN, Defendant and Appellant.

Crim. No. 568.

Supreme Court of North Dakota.

Jan. 27, 1977.

Daniel J. Chapman, Bismarck, for defendant and appellant.

John M. Olson, State's Atty., and Rolf P. Sletten, Asst. State's Atty., Bismarck, for plaintiff and appellee; argued by Rolf Sletten.

PEDERSON, Justice.

This is an appeal by the defendant, Gerald A. Ghylin, from his conviction by the Burleigh County Court With Increased Jurisdiction of the crime of being in "actual physical control" of a vehicle upon a highway while under the influence of intoxicating liquor, in violation of § 39–08–01, NDCC. In this proceeding, Ghylin contends that (1) he was not in "actual physical control" of the vehicle, and (2) he was not "upon a highway" at the time of his arrest. We affirm.

Ghylin was arrested by Burleigh County Deputy Sheriff Paul Genter about midnight on April 17, 1976, after Genter had stopped his patrol car two or three miles west of Wing, North Dakota, to investigate a vehicle in the ditch, apparently signalling for help with its headlights. Genter testified that as he approached Ghylin was just getting out of the driver's side of the vehicle and, in doing so, he made a motion as if he were taking the keys out of the ignition. The deputy sheriff observed that Ghylin had the keys in his hand as he alighted from the vehicle.

According to Genter's testimony, Ghylin told him that he had driven into the ditch and gotten stuck. After detecting the odor of alcohol, Genter asked Ghylin to perform some balancing and coordination tests, such as finger-to-nose and walking a straight line. Ghylin's poor performance of these tests indicated to Officer Genter that Ghylin was intoxicated; he placed him under arrest, informed him of his *Miranda* rights, and transported him to the Burleigh County sheriff's office.

Deputy Sheriff Genter also testified that during the ride to Bismarck, Ghylin again indicated that he had been driving the vehicle. At the Burleigh County sheriff's office, Ghylin was given a Breathalyzer test, which subsequently indicated a blood alcohol content of .14%.

Ghylin's version of the incidents of the evening differs markedly from Deputy Sheriff Genter's testimony, and is substantially as follows:

Ghylin left Wing in the company of a hitchhiker he had picked up earlier in the evening. The hitchhiker was actually driving the vehicle with Ghylin's permission when it left the road and went into the ditch a few miles west of Wing. When the deputy sheriff arrived on the scene, the hitchhiker, afraid of being arrested, hid on the floorboard of the vehicle and remained undetected. Ghylin did not tell Officer Genter that he had been driving that evening, as Genter, on two occasions, testified that he had, nor did he disclose to anyone that someone else was driving, apparently in an effort to protect the hitchhiker.

Ghylin also disputes the deputy sheriff's testimony that he removed the key from the ignition, or that he was given any balancing or coordination tests prior to his

arrival at the Burleigh County sheriff's office.

In support of Ghylin's testimony, defense witness Albert Rosenau testified that at about midnight on the evening in question he observed the Ghylin vehicle and recognized Ghylin as a passenger in that vehicle, although he was unable to identify the driver. One additional conflict in the evidence involves a rear tire of Ghylin's vehicle which, from an examination of a picture introduced as an exhibit by Ghylin at trial, appears to be completely off the rim of the vehicle. Deputy Sheriff Genter testified that all of the tires were on the vehicle when he arrested Ghylin that evening.

■ The statute under which Ghylin was convicted, § 39–08–01, NDCC, states in part:

"1. No person shall drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if:

"a. * * *

"b. He is under the influence of intoxicating liquor;"

Ghylin first contends that the evidence was insufficient to support the conclusion that he was in actual physical control of his vehicle. We believe that, in view of the foregoing conflicting evidence concerning the events of the evening, sufficient evidence existed to support Ghylin's conviction of being in actual physical control of a vehicle while intoxicated. As we said in *State v. Allen*, 237 N.W.2d 154, 161 (N.D. 1975):

"We have noted the different perspectives of the trial court and the appellate court as to circumstantial evidence:

'In *State v. Miller*, 202 N.W.2d 673 (N.D.1972); *State v. Champagne*, 198 N.W.2d 218 (N.D.1972), and *State v. Carroll*, 123 N.W.2d 659 (N.D.1963), we pointed out that the rule as to circumstantial evidence, at the trial level, is that such evidence must be conclusive and must exclude every reasonable hypothesis of innocence, but at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction.' *State v. Kaloustian*, 212 N.W.2d 843, 845 (N.D. 1973); *accord, State v. Fuchs*, 219 N.W.2d 842, 846 (N.D.1974); *State v. Neset*, 216 N.W.2d 285, 287 (N.D.1974); and *State v. Steele*, 211 N.W.2d 855, 870 (N.D.1973)."

The admission of the defendant on two separate occasions that he was driving, along with the other evidence, is sufficient to support the trial court's conclusion that he was in actual physical control of the vehicle. Ghylin attempts to distinguish the instant case from the situation in *State v. Schuler*, 243 N.W.2d 367 (N.D.1976), in which we affirmed a conviction of being in actual physical control of a vehicle when the defendant was shown to have been behind the steering wheel of the vehicle, the ignition was turned to the "on" position, and the transmission was engaged. He contends that in the instant case the ignition was off and the transmission was not engaged.

The definition of "actual physical control" does not rest on such fine distinctions. The court, in *Commonwealth v. Kloch,* 230 Pa.Super. 563, 327 A.2d 375, 383 (1975), defined the phrase in these terms:

"A driver has 'actual physical control' of his car when he has real (not hypothetical), bodily restraining or directing influence over, or domination and regulation of, its movements of machinery. * * *

"It is not dispositive that appellant's car was not moving, and that appellant was not making an effort to move it, when the troopers arrived. A driver may be in 'actual physical control' of his car and therefore 'operating' it while it is parked or merely standing still 'so long as [the driver is] keeping the car in restraint or in position to regulate its movements. Preventing a car from moving is as much control and dominion as actually putting the car in motion on the highway. Could one exercise any more regulation over a

thing, while bodily present, than prevention of movement or curbing movement.' *State v. Ruona, supra* [133 Mont. 243] at 248, 321 P.2d [615] at 618." [Punctuation as in original.]

In *State v. Schuler, supra,* we noted that the Oklahoma court in *Hughes v. State,* Okl.Cr., 535 P.2d 1023, 1024 (1975), sustained a conviction for being in actual physical control where the defendant was found slumped behind the steering wheel, with the key in the ignition. In that case, the Oklahoma court said:

"We believe that an intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than where an intoxicated person is actually driving a vehicle, but it does exist. The defendant when arrested may have been exercising no conscious violation with regard to the vehicle, still there is a legitimate inference to be drawn that he placed himself behind the wheel of the vehicle and could have at any time started the automobile and driven away. He therefore had 'actual physical control' of the vehicle within the meaning of the statute."

Ghylin argues that to sustain convictions of being in actual physical control of a vehicle while intoxicated in cases where the defendant has voluntarily stopped his vehicle off the road after realizing his inability to drive safely is to discourage such behavior in the future. He argues that convictions under these circumstances will encourage drivers aware of their impaired driving capability to continue driving rather than risk conviction for being in actual physical control should they pull off the highway to await other transportation.

 While we believe such behavior should be encouraged, the real purpose of the statute is to deter individuals who have been drinking intoxicating liquor from getting into their vehicles, except as passengers. As stated in *State v. Schuler, supra,* the "actual physical control" offense is a preventive measure intended to deter the drunken driver. One who has been drink-

ing intoxicating liquor should not be encouraged to test his driving ability on the highway, even for a short distance, where his life and the lives of others hang in the balance.

In *City of Cincinnati v. Kelley,* 47 Ohio St.2d 94, 351 N.E.2d 85 (1976), the Ohio court sustained a conviction of being in actual physical control where the defendant was found in his vehicle at the side of the road. After realizing he was in no condition to drive, the defendant had left the vehicle to telephone his wife to pick him up. When the police arrived, they found him back in his car, with the key in the ignition, supposedly awaiting his wife's arrival. Finding the defendant to have been in actual physical control, the court said:

"Therefore, the term 'actual physical control,' as employed in the subject ordinance, requires that a person be in the driver's seat of a vehicle, behind the steering wheel, in possession of the ignition key, and in such condition that he is physically capable of starting the engine and causing the vehicle to move." 351 N.E.2d at 87, 88.

Even if we could envision a set of circumstances in which a defendant, by his conduct, finding himself upon a highway in an impaired condition, acted reasonably to safeguard his life and the lives of others, this is certainly not such a case. At trial, Ghylin testified that he was attempting to get his vehicle out of the ditch, and that the vehicle almost broke free when Deputy Sheriff Genter arrived. Such conduct does not represent a realization of impaired driving ability, a sincere effort to remain off the highway, or a concern for the safety of others.

Ghylin next contends that he was not "upon a highway" when apprehended, as required by the statute. Section 39–01–01, NDCC, contains the statutory definition of these relevant terms:

"21. 'Highway' shall mean the entire width between the boundary lines of every way publicly maintained when any part thereof is open to

the use of the public for purposes of vehicular travel;

\* \* \* \* \* \*

"50. 'Right of way' shall mean the privilege of the immediate use of a roadway;

\* \* \* \* \* \*

"52. 'Roadway' shall mean that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder. In the event a highway includes two or more separate roadways the term 'roadway' as used herein shall refer to any such roadway separately but not to all such roadways collectively;"

Ghylin's argument that the ditch along the roadway is not part of the "highway" rests upon this tenuous logic: "Highway" in subsection 21 above is defined as the entire width of every way publicly maintained. "Way" refers to "right of way," defined in subsection 50 above as use of a "roadway," which is further defined in subsection 52 above as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder."

Thusly, Ghylin arrives at his definition of "highway." Such a narrow definition of "highway" has been foreclosed, however, by our decision in *State v. Fuchs*, 219 N.W.2d 842 (N.D.1974), where in sustaining a conviction of driving while intoxicated, we held that the shoulder is considered to be part of the highway.

Moreover, the subsections set out above clearly encompass a broader definition of "highway" than Ghylin suggests. A rule of statutory construction is that words will be given their plain, ordinary, and commonly understood meaning. *Tormaschy v. Hjelle*, 210 N.W.2d 100 (N.D.1973). Subsection 21 of Section 39–01–01 defines "highway" as "the entire width \* \* \* when any part thereof is open to the use of the public for purposes of vehicular travel." The clear inference is that "highway" means more than the paved or improved

portion used for travel. This analysis is supported by the definition of "Roadway" in subsection 52. That term, which Ghylin proposes as a synonym for "highway," is defined, in part, as "that portion of a highway," thus clearly indicating that "highway" includes an area larger than that portion improved and used exclusively for vehicular travel. In this instance, we believe the statutory definition of "highway" includes the ditch alongside the roadway.

We believe the evidence was sufficient to sustain the conviction of being in actual physical control of a vehicle upon a highway while under the influence of intoxicating liquor.

The judgment is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VOGEL, JJ., concur.