**STATE of Minnesota, DEPARTMENT OF PUBLIC SAFETY, petitioner, Appellant,**

v.

**David Clarence JUNCEWSKI, Respondent.**

No. 51284.

Supreme Court of Minnesota.

July 17, 1981.

---

Warren Spannaus, Atty. Gen., and Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Genty & Eggert and Richard D. Genty, Winsted, for respondent.

SCOTT, Justice.

This matter involves an appeal[1] from a three-judge district court appeals panel's order affirming the McLeod County Court's determination that respondent did not violate Minn.Stat. § 169.121, subd. 1(a) (1980). That statute reads:

> It is a misdemeanor for any person to drive, operate or *be in physical control* of any motor vehicle within this state:
>
> (a) When the person is under the influence of alcohol

(Emphasis added.)

In determining that respondent, David Juncewski, did not violate § 169.121, subd. 1(a), the county court order rescinded the Department of Public Safety's proposed revocation of respondent's driver's license based upon his refusal to submit to testing when requested to do so. The three-judge district court appeals panel affirmed on different grounds than relied upon by the county court. We reverse.

On October 26, 1978, at approximately 9:00 p. m., the Glencoe Police Department received a call that a person was lying underneath a vehicle parked on the side of County Road 22 about six miles north of town. Upon arriving at the scene, Glencoe Police Officer Peddycoart was flagged down by an individual who identified himself as the person who had called. He stated that the person was no longer under, but inside, the vehicle. The officer found respondent, David Juncewski, inside a pickup truck, seated behind and leaning against the steering wheel. Officer Peddycoart rapped on the pickup's door; Juncewski made no response. Officer Peddycoart then opened the door and inquired whether Juncewski was in any distress. Again, Juncewski did not respond, other than to turn and stare at the officer. McLeod County Deputy Sheriff Owen Tonak arrived at the scene five minutes after Officer Peddycoart. Officer Peddycoart advised Deputy Tonak that Juncewski appeared to be intoxicated. Both officers thought that the motor of the pickup was running, but were unable to testify with any degree of certainty regarding the matter. The key, however, was in the ignition. After Juncewski failed a number of field sobriety tests, Deputy Tonak also concluded that he was intoxicated. At Deputy Tonak's request, Officer Peddycoart administered a preliminary screening test, and obtained a "fail" reading. Juncewski was then arrested and taken to the sheriff's office. There, Juncewski was read the Implied Consent Advisory Form. He refused to take either the blood or breath test, giving as his only reason for refusing, "I'm tired." While at the sheriff's office Juncewski stated that he had been drinking at Silver Lake, which is about six or eight miles from where he was found. There is no evidence in the record that Juncewski consumed any alcohol after driving onto the shoulder of County Road 22.

Juncewski was given notice of revocation of his driver's license pursuant to Minn. Stat. § 169.123, subd. 5 (1980). He requested a hearing on the proposed revocation, which was held on April 11, 1979. At that hearing Juncewski submitted no evidence; he contended that his license could not be revoked because there was no definite proof that his pickup truck's motor was running at the time the officers investigated. Juncewski contended that, absent such proof, he could not be in "physical control" of the vehicle. He also contended that Officer

---

1. We granted appellant's petition for permission to appeal, pursuant to Minn.R.Civ.App.P. 105.01.

Peddycoart acted improperly in administering the screening test outside the Glencoe city limits.

The McLeod County Court determined that the Department of Public Safety had not proved that Juncewski was in "physical control" of the motor vehicle and therefore he could not be lawfully arrested, precluding the imposition of the implied consent statute. The court did not discuss the challenge to the screening test. The two-judge majority of the district court appeals panel affirmed on the theory that the preliminary screening test was improperly administered. The dissenting judge urged reversal on the "physical control" issue alone.

The issues presented in this case are:

(1) Whether having the engine running is an essential element of the offense of "physical control of a motor vehicle while under the influence of alcohol" in violation of Minn.Stat. § 169.121, subd. 1(a) (1980).

(2) Whether a "preliminary screening test" can be administered pursuant to Minn. Stat. § 169.121, subd. 6 (1980), when a police officer has specific and articulable facts as a basis for believing that a person has been driving, operating, or physically controlling a motor vehicle while under the influence of alcohol.

(3) Whether the city police officer legally administered the preliminary screening test.[2]

■ 1. This court has repeatedly recognized that laws prohibiting a person from driving a motor vehicle while intoxicated are remedial statutes. Consequently, such laws are liberally interpreted in favor of the public interest and against the private interests of the drivers involved. *See, e. g., Goldsworthy v. State,* 268 N.W.2d 46, 49 (Minn.1978) (the primary thrust of such laws "is remedial and intended to protect public safety on the highway"); *State v. Mulvihill,* 303 Minn. 361, 363, 227 N.W.2d 813, 815 (1975) (decisions restricting application of implied consent law to be narrowly

construed); *State v. Beckey,* 291 Minn. 483, 487, 192 N.W.2d 441, 444 (1971) ("our implied consent law is designed to aid the proper enforcement of our driving-while-under-the-influence statute"); *State v. Halvorson,* 288 Minn. 424, 425, 181 N.W.2d 473, 474 (1970) ("Its remedial purpose is to promote traffic safety.")

The Minnesota Legislature, in an effort to cover the broadest possible range of conduct, made it a misdemeanor to "drive, operate *or be in physical control of any motor vehicle* " while "under the influence of alcohol." Minn.Stat. § 169.121, subd. 1 (1980) (emphasis added). Less than two months before Juncewski's arrest Section 169.121 was amended to modify the requirement that a driver be in "actual physical control" by deleting the word "actual." *See* Act of Apr. 5, 1978, ch. 727, § 9, 1978 Minn.Laws 799, 799 (current version at Minn.Stat. § 169.121, subd. 1 (1980)). By eliminating one qualifying adjective, the legislature intended that the statute be given the broadest possible effect.

Neither the legislature nor this court has defined when a person is in "physical control" of an automobile. Case law from foreign jurisdictions, however, is instructive. Several courts have found a defendant to be in "actual physical control" of an automobile even when the motor was not running. For example, in *City of Cincinnati v. Kelley,* 47 Ohio St.2d 94, 351 N.E.2d 85 (1976), the defendant, while sober, drove into town. After drinking at a bar, he realized that he was in no condition to drive home. After calling his wife to pick him up, the defendant returned to his car. Shortly thereafter, he was arrested for being in "actual physical control" of an automobile while intoxicated. The court affirmed the conviction even though the motor was not running.

In *State v. Schuler,* 243 N.W.2d 367 (N.D. 1976), the defendant was found seated behind the steering wheel, the key in the ignition turned to the "on" position, but the

---

**2.** Respondent raises two additional issues. First, whether the Minnesota Implied Consent Law is unconstitutionally ambiguous. Second, whether respondent was adequately informed as to his right to consult with an attorney pursuant to Minn.Stat. § 169.123, subd. 2(b)(3) (1980). Neither party raised these issues in the courts below. Therefore, these issues are not properly before this court and will not be commented upon.

car was not running. In affirming the conviction of being in "actual physical control" of a motor vehicle while intoxicated, the *Schuler* court noted that "[t]he purpose of the 'actual physical control' offense is a preventive measure." *Id.* at 370.

The North Dakota Supreme Court again examined this issue in *State v. Ghylin*, 250 N.W.2d 252 (N.D.1977). In *Ghylin*, the driver claimed that because his keys were not in the ignition he could not be in "actual physical control" of the automobile. He also argued that to affirm his conviction would discourage inebriated drivers from pulling over to the side of the road to "sleep it off." Juncewski makes a similar public policy argument in the instant case. In rejecting that argument, the *Ghylin* court stated:

> While we believe such behavior should be encouraged, the real purpose of the statute is to deter individuals who have been drinking intoxicating liquor from getting into their vehicles, except as passengers. As stated in *State v. Schuler, supra*, the "actual physical control" offense is a preventive measure intended to deter the drunken driver. One who has been drinking intoxicating liquor should not be encouraged to test his driving ability on the highway, even for a short distance, where his life and the lives of others hang in the balance.

*Id.* at 255.[3]

Some courts have even found defendants guilty of "driving a motor vehicle" while intoxicated under similar circumstances. *See State v. Cannon*, 56 Haw. 161, 532 P.2d 391 (1975); *State v. Brown*, 5 Or.App. 412, 485 P.2d 444 (1971).

Other jurisdictions have found defendants guilty of "operating a motor vehicle"

while intoxicated under analogous facts. *See State v. Englehart*, 158 Conn. 117, 256 A.2d 231 (1969) (vehicle found in center of roadway with unconscious defendant behind wheel); *Commonwealth v. Taylor*, 237 Pa. Super. 212, 352 A.2d 137 (1976) (vehicle found off road after accident with defendant behind wheel).

Only two courts have held that a defendant was not in "actual physical control of an automobile under similar facts. *See Bearden v. State*, 430 P.2d 844 (Okl.Cr., 1967); *State v. Bugger*, 25 Utah 2d 404, 483 P.2d 442 (1971).

Whether a motor must be running before a person may be in actual physical control is essentially a policy issue. Because Minnesota laws designed to prevent driving while intoxicated are to be broadly construed in the public's favor, we hold that Juncewski exercised the necessary control to have violated Minn.Stat. § 169.121, subd. 1(a) (1980). Such a conclusion also finds support in *State v. Harris*, 295 Minn. 38, 202 N.W.2d 878 (1972).

2. The district court majority opinion held that the preliminary screening test was improperly administered. Although Juncewski never asserted this defense, the district court reasoned that an officer can request a screening test under Minn.Stat. § 169.121, subd. 6 (1980), only when he witnesses erratic driving. That statute states:

> When a peace officer has reason to believe from the manner in which a person is driving, operating, or controlling a motor vehicle, *or has driven, operated, or controlled a motor vehicle*, that the driver may be violating or has violated subdivision 1, he may require the driver to provide a sample of his breath for a prelimi-

**3.** Respondent cites no case law to support the alleged public policy "to encourage individuals * * * to pull over and sleep it off." Contentions that such persons, who remain in their vehicles, should be immunized from prosecution, have clearly been explicitly or implicitly rejected by numerous courts. *See, e. g., State v. Webb*, 78 Ariz. 8, 274 P.2d 338 (1954); *City of Kansas City v. Troutner*, 544 S.W.2d 295 (Mo.1976); *State v. Ruona*, 123 Mont. 243, 321 P.2d 615 (1958); *State v. Martin*, 116 N.H. 47,

351 A.2d 52 (1976); *Williams v. City of Petersburg*, 216 Va. 297, 217 S.E.2d 893 (1975).

Moreover, there is no testimony in the record to support the claim that respondent pulled over to "sleep it off." There is no explanation in the record of why respondent stopped on the shoulder of County Road 22. Respondent failed to introduce any evidence in the lower court. It is just as possible that respondent fell asleep at the wheel due to the effect of alcohol consumption.

nary screening test using a device approved by the commissioner of public safety for this purpose. The results of this preliminary screening test shall be used for the purpose of deciding whether an arrest should be made and whether to require the chemical tests authorized in section 169.123, but shall not be used in any court action except to prove that a chemical test was properly required of a person pursuant to section 169.123, subdivision 2. Following the screening test additional tests may be required of the driver pursuant to the provisions of section 169.123.

The driver of a motor vehicle who refuses to furnish a sample of his breath is subject to the provisions of section 169.-123 unless, in compliance with section 169.123, he submits to a blood, breath or urine test to determine the presence of alcohol or a controlled substance.

*Id.* (emphasis added).

■ The district court erred in its construction of Minn.Stat. § 169.121, subd. 6 (1980). That statute clearly refers to both present and past conduct. Past conduct includes conduct not witnessed by the officer. Any other construction would render the "is driving * * * or has driven * * *" language meaningless. The use of the past tense can only refer to situations where the officer did not witness the actual driving, but nevertheless had a specific and articulable suspicion of a violation of Minn.Stat. § 169.121 (1980). The record in the instant case clearly indicates that Officer Peddycoart and Deputy Tonak had specific and articulable facts as a basis to believe that Juncewski had been driving, operating or controlling his motor vehicle while under the influence of an intoxicating beverage. Both officers responded to a call that a person was lying underneath a vehicle on the shoulder of County Road 22. Upon arriving at the scene they discovered Juncewski passed out inside his pickup truck, smelling of alcohol, and unable to respond to questions. Because of these facts the officers had a basis for an articulable suspicion, using the same standard as outlined in *State v. Cavegn*, 294 N.W.2d 717, 721–22 (Minn.1980), and *Marben v. Department of*

*Public Safety*, 294 N.W.2d 697, 699–700 (Minn.1980).

■ 3. Finally, Juncewski contends that his arrest was unlawful because Officer Peddycoart was outside his jurisdiction when he administered the preliminary screening test. This contention also is without merit. In *State v. Filipi*, 297 N.W.2d 275 (Minn.1980), we noted that a police officer outside his jurisdiction has—

the arrest powers of a private citizen, such as these may be, in the district where the arrest is made. Thus, if an arrest by a private citizen would be lawful under the existing circumstances, an arrest by an officer away from his own bailiwick would be lawful, otherwise not. This rule has been applied to arrests made by city police officers outside the confines of their municipalities, and also to peace officers of one state operating in another.

*Id.* at 278 (quoting with approval E. Fisher, *Laws of Arrest* § 142 (1967) (footnotes omitted)).

■ In this state the power of private persons to arrest is governed by Minn.Stat. § 629.37 (1980), which provides:

A private person may arrest another:

(1) For a public offense committed or attempted in his presence;

*Id.* In this case a misdemeanor was committed in Officer Peddycoart's presence because Juncewski's conduct violated Minn. Stat. § 169.121, subd. 1(a) (1980).

Since the officers had specific and articulable facts as a basis for administering the preliminary screening test and had the authority to arrest when the "fail" reading was obtained, we hold that Officer Peddycoart legally administered the preliminary screening test. Consequently, the arrest was lawful.

Reversed and remanded, with instructions that an order issue revoking Juncewski's driving privileges.