**STATE of Minnesota, Respondent,**

v.

**David L. THURMER, Appellant.**

No. C8–83–1671.

Court of Appeals of Minnesota.

May 1, 1984.

Hubert H. Humphrey, III, Atty. Gen., R. Kathleen Morris, Scott County Atty., Shakopee, for respondent.

Michael McDonald, Prior Lake, for appellant.

Considered and decided by FOLEY, P.J., WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Defendant-Thurmer appeals his conviction for (1) driving under the influence (DUI), (2) possession of a dangerous weapon, and (3) possession of a small amount of marijuana. Defendant argues that the evidence is insufficient to support a finding beyond a reasonable doubt that he is guilty of these offenses.

## FACTS

On the morning of January 9, 1983, Deputy Donald Buchan investigated the report of a car in the ditch off County Road 15 in Scott County. At approximately 8 a.m. Deputy Buchan found the car in the snow-filled ditch. He walked down into the ditch and saw defendant-Thurmer sleeping on the front seat of the car. The keys were in the ignition. Outside the driver's door sat an empty beer bottle which he believed had recently been put there.

Finding the driver's door locked, Deputy Buchan walked around to the passenger's side, opened the door and spoke to Thurmer. Thurmer sat up on the seat. The deputy asked him if he was okay and Thurmer replied "Yeah, I guess." When asked "How did you manage to get down here in the ditch?", Thurmer replied, "I don't know, I just went off the road." Thurmer estimated he had been there about two hours.

Deputy Buchan observed that Thurmer's eyes were bloodshot and watery, he had a smell of alcohol on his breath, and his speech was slurred. The deputy had to help Thurmer walk up out of the ditch.

After an implied consent advisory was administered, Thurmer was taken to the Scott County jail where he contacted an attorney. About an hour after arriving at the jail, Thurmer submitted to a breath test which revealed a blood-alcohol concentration of .10. The sample of the room air was .001.

While at the jail, Thurmer sat in the booking room with Deputy Buchan and jail security officer Al Dumbleton. As Thurmer was escorted from the booking room (to go get a blood test at the hospital), Officer Dumbleton noted a substance on the floor underneath and alongside of the chair where Thurmer had been sitting. Buchan and Dumbleton both testified there was nothing on the floor when Thurmer entered the room. Suspecting the substance to be marijuana, Officer Dumbleton collected it for Deputy Buchan. An analysis revealed that the substance was .03 ounces of marijuana.

After Thurmer returned from his blood test, he was booked and searched. Brass knuckles were found inside the lining of Thurmer's jacket.

Thurmer was prosecuted for:

1. being in actual physical control of a motor vehicle while under the influence or with a alcohol concentration of .10 or greater, a violation of Minn.Stat. § 169.-121, subd. 1(a), and subd. 3;

2. possessing a dangerous weapon in violation of Minn.Stat. § 609.66; and

3. possessing a small amount of marijuana, a petty misdemeanor and violation of Minn.Stat. §§ 152.09, subd. 1(2) and 152.15, subd. 2(5).

Defendant waived jury trial. Following trial, a Scott County judge found defendant guilty of all three counts. Defendant's motions for a new trial and to vacate judgment were denied and this appeal followed.

## ISSUES

Whether the evidence was sufficient to support the trial court conclusion that:

(1) Thurmer was (a) in physical control of a motor vehicle within the State of Min-

nesota (b) while under the influence of alcohol;

(2) Thurmer possessed brass knuckles; and

(3) Thurmer possessed marijuana.

## ANALYSIS

*Scope of Review:*

■ Trial court "findings are entitled to the same weight as the verdict of a jury." *State v. Gardin*, 251 Minn. 157, 86 N.W.2d 711, 715 (1957). If the court could reasonably have found the defendant guilty, that verdict should not be reversed. *See State v. Nash*, 342 N.W.2d 177, 179 (Minn.App.Ct.1984).

*Sufficiency of Evidence:*

In reviewing the sufficiency of evidence, this court has recognized that it "is limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts," a court could "reasonably conclude that the defendant was guilty of the offense charged." *Id.* "We cannot retry the facts, but must take the view of the evidence most favorable to the state...." *Id.*

*1(a) Physical Control of Vehicle:*

Appellant argues the record does not demonstrate, beyond a reasonable doubt, that defendant was in physical control of the vehicle. Appellant defines "physical control" as an ability to control and regulate a vehicle's movements. *See State v. Ghylin*, 250 N.W.2d 252 (N.D.1977) (citing *Commonwealth v. Kloch*, 230 Pa.Super. 563, 327 A.2d 375, 383 (1975)). Here, appellant argues he was not in a position to control and regulate the vehicle's movements since he was asleep on the front seat of the car and it was stuck in snow in the ditch.

The Minnesota Supreme Court has noted that the actual physical control offense is a preventive measure intended to deter drunken drivers from getting into their vehicles except as passengers. *State v. Juncewski*, 308 N.W.2d 316, 320 (Minn.1981).

"One who has been drinking intoxicating liquor should not be encouraged to test his driving ability on the highway, even for a short distance, where his life and the lives of others hang in the balance." *Id.* Cases dealing with the issue of "actual physical control" therefore evaluate whether a finding in a particular case will support these recognized policy concerns. *E.g. Juncewski, Ghylin, State v. Schuler*, 243 N.W.2d 367 (N.D.1976), *Hughes v. State*, 535 P.2d 1023 (Okl.Cr.1975).

In the following cases the drivers have been held to be in actual physical control of their vehicle:

1. Defendant was found inside vehicle seated behind and leaning against the steering wheel. The vehicle was parked on the side of a county road about 6 miles from town. The key was in the ignition, the motor may have been running when the officers arrived. Defendant stated he had been drinking at a location 6 or 8 miles from where he was found; there was no evidence he drank on the shoulder of the road. *Juncewski*, 308 N.W.2d 316.

2. Defendant was found sitting behind the steering wheel of her car which had its back end in the ditch and front end on the road. The keys were in the ignition which was turned on; the transmission was in drive. *Schuler*, 243 N.W.2d 367.

3. Defendant was slumped and unconscious on driver's seat of illegally parked vehicle with key in ignition. *Hughes*, 535 P.2d 1023 (quoted in *Schuler*).

4. Defendant signalled with his headlights as his vehicle sat in the ditch on a road 2–3 miles from town. As the officer approached the vehicle, defendant appeared to turn the key off. He got out with his keys in hand. Defendant stated he had been driving the vehicle and was trying to get it back on the road. *Ghylin*, 250 N.W.2d 252.

5. Defendant was found either asleep or unconscious, lying on the front seat of his car. The car was parked along a city street with the engine running. Defendant was disoriented when he was awakened by

the officer. *State, Dept. of Public Safety v. Rice,* 323 N.W.2d 74 (Minn.1982).

6. Defendant was found slumped over asleep behind the steering wheel of his vehicle, which was parked with the left wheels on the traveled roadway portion of a city street. The motor was running and the parking lights were on. *Kirby v. State, Dept. of Public Safety,* 262 N.W.2d 49 (S.D.1978).

7. Defendant was found asleep with his hands and head resting on the steering wheel of his idling truck, which was found in the traffic lane of a street. *State v. Webb,* 78 Ariz. 8, 274 P.2d 338 (1954) (cited in *Kirby* at 51).

■ In most of these cases, the defendant was also found asleep in the vehicle on the side of the road. In two cases the vehicle appeared to be stuck on the side of the road. These cases recognize that "operation of a motor vehicle can be established by circumstantial evidence ... here where the question is whether the Defendant was in control of the motor vehicle." *Schuler* at 370. Based on the above-cited cases, we hold that the trial court properly concluded that a person, who was found alone asleep in the front seat of the car in a ditch off a county road with keys in the ignition, and who said he drove the car there, was in physical control of the vehicle.

### 1(b) Under influence of alcohol:

Defendant argues the record does not show beyond a reasonable doubt that he was under the influence of alcohol because no field sobriety tests were conducted, because Deputy Buchan did not report that he believed defendant was intoxicated, and because defendant's blood alcohol level was actually less than .10 since the air sample was .001.

The record shows that Deputy Buchan observed that defendant's eyes were bloodshot and watery, he had trouble walking up the ditch, and his breath had the slight odor of alcohol. Deputy Buchan's report shows that defendant could not successfully provide a sample for a preliminary breath test.

Defendant was administered a breath test approximately one hour after he was picked up. He said he did not have anything to drink since the night before and he sat in the ditch for about two hours before he was picked up.

The officer who administered the breath test stated that defendant's blood alcohol level was .10 and that there were no facts that hindered this test.

Viewing the evidence most favorable to the state, drawing only legitimate inferences from these facts, we hold that the trial court could reasonably find that defendant was under the influence of alcohol while in actual physical control of a motor vehicle.

### 2. Possession of Brass Knuckles:

■ The record shows that Deputy Buchan observed Officer Dumbleton pull the brass knuckles from the lining of defendant's black leather jacket at the time he was searched. The deputy marked them with his initials and identified them at trial. Defendant was under the deputy's observation and control the entire time defendant was in custody until the time the knuckles were found.

The record clearly supports the trial court conclusion that defendant had possession of the brass knuckles at the time he was arrested and booked.

### 3. Possession of Marijuana:

■ The record shows defendant was under the physical custody and control of Deputy Buchan from the time he was picked up until he was booked. Defendant was first brought to the booking room of the station where he made several phone calls. Only Security Officer Dumbleton and Deputy Buchan were in the room with him. Both officers testified the floor of the room had no debris on it when defendant was brought into the room.

As Deputy Buchan escorted defendant from the room, Officer Dumbleton noted a green-brownish substance next to the chair

that defendant had sat in the entire time he was in the room. Dumbleton collected the substance. Buchan inspected the substance. He concluded that it appeared to be marijuana. An analysis revealed that the substance was .03 ounces of marijuana.

Subsequently when defendant was searched a small empty plastic container, which is normally used for 33 mm. film, was found in defendant's jacket. Deputy Buchan testified it appeared to contain what he believed was residue from marijuana. Also, Officer Dumbleton testified: "I said to the Defendant, I didn't care for the deposit that he made on my nice clean floor and he just smiled."

The evidence in the record reasonably supports the trial court finding that defendant possessed marijuana.

## DECISION

1. The evidence reasonably supports the trial court conclusion that defendant was in physical control of a motor vehicle where the defendant was found intoxicated in a car in the ditch and he told the arresting officer he drove the car there.

2. The evidence reasonably supports the trial court conclusion that defendant possessed brass knuckles when brass knuckles were found in his coat while defendant was being booked.

3. The evidence reasonably supports the trial court conclusion that defendant possessed marijuana where marijuana was found in the booking room after defendant was booked.

Affirmed.