William Edward WALEK,
petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C8–84–1339.

Court of Appeals of Minnesota.

Feb. 5, 1985.

John A. Pecchia, St. Paul, for appellant.

Ann L. Russell, St. Paul, for respondent.

Heard, considered, and decided by WOZNIAK, P.J., and PARKER, and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal from the trial court's order sustaining the revocation of appellant's driver's license pursuant to Minn. Stat. § 169.123 (Supp.1983). We affirm.

## FACTS

On March 8, 1984, appellant William Walek had dinner with his girlfriend, LeAnn Monette, his ex-wife, and his daughter. He drank some beer during dinner. He and Monette left together in Walek's car, with Monette driving. They experienced some difficulties with the car. It stalled once, but Monette was able to restart it. The engine stalled again near a railroad crossing. Monette could not restart the car this time.

Testimony at hearing varied slightly regarding subsequent events. Officer James Youngren of the Maplewood Police Department testified that he was on routine patrol that night. He observed Walek's car stopped with the door open in the traffic lane on Larpenteur. Youngren stopped next to Walek and asked him what the problem was. The officer testified that Walek replied, in effect, there was no problem. Walek then started the vehicle, which jumped backwards slightly.

According to Youngren, he got out of his squad car and approached Walek. The officer asked for Walek's driver's license, and Walek got out of his car. Youngren smelled alcohol on Walek's breath, and asked him to take a field sobriety test. Walek refused, and was generally agitated. Youngren further noticed Walek's watery eyes, and noted that he staggered. Youngren arrested Walek for being in control of a motor vehicle while under the influence of alcohol.

In contrast to Officer Youngren's testimony, Walek testified that he was kneeling outside the car, trying to get it started, when Monette said the police were coming. He stood up, and was standing by the car when Officer Youngren stopped. Walek said Youngren asked what was wrong, and

Walek told him the car stalled. Youngren then commented on the open door and a case of beer in the car, and asked if Walek had been drinking. Walek said yes. He claims the officer then asked him to pull the car over to the side of the road, which he did. Youngren denied making this request. Walek claims this is the first time he got into the car. He then got out of the car and gave Officer Youngren his license. Walek agrees he was agitated and frustrated, but not as belligerent as Officer Youngren suggests.

Monette testified that she drove the car until it stalled. She agrees Walek was outside the car when Youngren arrived. According to Monette's testimony, Youngren asked if there was a problem, Walek answered that the car stalled, then got into the car and started it, got out of the car and was asked by the officer if he had been drinking, to which Walek answered "yes." According to Monette, it was at this point that Youngren asked Walek to pull the car over to the side, sometime after Walek started the car on his own initiative.

At the station, Walek refused the chemical test, and his license was revoked. The trial court affirmed the revocation, finding that at the time the officer arrived Walek was in the driver's seat, in control of the car, and attempting to operate it. Walek contends Officer Youngren did not have probable cause to believe he was operating or in control of a motor vehicle.

## ISSUE

Was the trial court's finding that the officer had reasonable and probable cause to believe appellant was in physical control of the motor vehicle clearly erroneous?

## ANALYSIS

■ Minn.Stat. § 169.123, subd. 2(a) (Supp.1983), authorizes police officers to require chemical testing of a person "when an officer has reasonable and probable grounds to believe the person was driving, operating, or in physical control of a motor vehicle in violation of section 169.121," when the person is arrested for a violation of section 169.121. This demands specific and articulable facts as a basis for the officer's belief. *State, Department of Public Safety v. Juncewski*, 308 N.W.2d 316, 321 (Minn.1981). The legislature indicated its intent to give the implied consent statute the broadest possible effect when it deleted the word "actual" from the phrase "physical control" in the statute. *Id.* at 319.

■ Implied consent proceedings are civil. The burden of proof is on the state to show by a preponderance of the evidence that the officer had probable cause to believe appellant was in physical control of a vehicle while under the influence of alcohol. *Dufrane v. Commissioner of Public Safety*, 353 N.W.2d 705, 707 (Minn.Ct.App. 1984). The trial court's findings will be upheld unless clearly erroneous, giving due regard to the judge's ability to observe the witnesses' credibility. Minn.R.Civ.P. 52.01; *Northern States Power Co. v. Lyon Food Products, Inc.*, 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975).

■ The trial court found that Walek was in control of the car when Officer Youngren arrived. However, Walek would have this court recognize a "temporary control" exception to the statute. While we commend his efforts in having Monette drive after he had been drinking, we cannot read such an exception into the statute or the case law interpreting it.

On several occasions, this court has held defendant to be in physical control of a vehicle when he was not actually driving it. In *State v. Thurmer*, 348 N.W.2d 776 (Minn.Ct.App.1984), we upheld a DWI conviction based on a chemical test when the defendant was found asleep in the front seat of his car, which was in a ditch, with the keys in the ignition. The court found it supported the policy of the DWI legislation to find he was in physical control. In *Dufrane v. Commissioner of Public Safety*, 353 N.W.2d 705 (Minn.Ct.App.1984), Dufrane's upright presence in the front seat behind the wheel, plus the officer's testimony that Dufrane said he had driven the car

earlier, was enough to find probable cause for implied consent purposes. A similar case is *Berns v. Commissioner of Public Safety*, 355 N.W.2d 493 (Minn.Ct.App. 1984), where this court reversed the trial court's finding of no physical control.

Two recent cases involved drivers found lying on the front seats of their cars, which were parked on public streets. In one case, the keys were not in the ignition, and the driver was awake with an open beer can. *Martin v. Commissioner of Public Safety*, 358 N.W.2d 734 (Minn.Ct.App.1984). In the other, the driver was asleep, and it was not known whether the keys were in the ignition, the driver's pocket, or on the car seat. *Kozak v. Commissioner of Public Safety*, 359 N.W.2d 625 (Minn.Ct.App.1984). Both opinions held the trial court's finding of physical control was not clearly erroneous.

*State v. Pazderski*, 352 N.W.2d 85 (Minn. Ct.App.1984), held the evidence insufficient to uphold a criminal DWI conviction. Pazderski was found asleep in his car parked in the driveway of his home. The court distinguished this from the other physical control cases where the driver was found "short of his intended destination and, if left alone, might restart the vehicle in an intoxicated state and continue on." *Id.* at 88.

Here Walek was short of his intended destination. We note the conflicting testimony regarding whether he independently assumed control of the vehicle or whether it was at the officer's suggestion. According to Officer Youngren, Walek restarted the vehicle on his own initiative. His girlfriend also testified that he got in and started the car on his own initiative, before the officer allegedly asked him to move it over. Given the trial judge's opportunity to observe the credibility of the witnesses, we cannot say the trial court's finding that by the preponderance of the evidence the officer had probable cause to believe Walek was in physical control of the car was clearly erroneous.

## DECISION

Affirmed.