**Chester O. BUTTERFIELD, petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C4–86–614.

Court of Appeals of Minnesota.

Sept. 30, 1986.

James M. Grochal, Minneapolis, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., Lawrence M. Schultz, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by FORSBERG, P.J., and FOLEY and LANSING, JJ. without oral argument.

## OPINION

FOLEY, Judge.

Chester Butterfield refused testing pursuant to the implied consent law, and his driving privileges were revoked for one year. Upon his petition for judicial review, the trial court sustained the revocation. This appeal followed.

## FACTS

Chaska Police Officer Scott Knight was on routine patrol on January 24, 1986. At approximately 1:55 a.m., he drove past the intersection of Highway 212 and Crosstown Boulevard, where a car wash is located. Although the car wash was closed, he saw a car in the lot with a person in the driver's position. He illuminated the vehicle with various lights, walked up to the car, and saw a man (appellant) slumped over the wheel who did not react to the lights. Knight then pounded on the window, but did not receive a response. Because appellant was not responding, Knight opened the door. As he did so, appellant aroused.

Knight became aware of a very strong odor of alcohol and asked the man for identification. Knight also observed that appellant's clothing was in a great state of disarray and disheveled. His speech was extremely slurred or thick-tongued, and his eyes were bloodshot and watery. When appellant left the vehicle, his balance was extremely poor; he relied continually on the vehicle as a means of support. Knight noticed a 12–pack of beer in the front seat next to appellant and a cardboard box holding 24 cans of beer in the back seat. He asked appellant to perform several field sobriety tests, but appellant did not even come close to attempting to do them. Knight formed the opinion that appellant was heavily intoxicated, placed him under arrest, and took him to the Carver County Sheriff's office.

Once they arrived at the sheriff's office, Knight read appellant the implied consent advisory. When asked to take a breath test, appellant said he wanted to make a phone call. Knight interpreted this to be a refusal, and asked why appellant was refusing. Appellant replied that he just wanted to make a telephone call.

On cross-examination, Knight acknowledged that he did not know what time appellant drove into the car wash and, in fact, never saw him driving. He believed appellant could have been there anytime between 8 p.m., when the car wash closed, until 2 a.m. when he found him. There was no indication in the police report as to whether keys were found in the car or on appellant's person. There were no signs of

an accident or erratic driving, and appellant, when asked, said that he was not operating a motor vehicle. In response to the officer's inquiry as to how he got to the car wash, appellant stated that he had nothing more to say.

On redirect examination, the officer testified that he found the keys when he frisked appellant, although there was nothing in the police report to substantiate this assertion. Earlier, the officer had testified that he had no recollection of the incident apart from what he recorded in the police report.

Appellant's driving privileges were revoked for refusal, and he petitioned for judicial review. After a hearing, the trial court sustained the revocation, and appellant brought this appeal.

## ISSUE

Did the police officer have probable cause to believe that appellant was in physical control of the motor vehicle?

## ANALYSIS

■ A police officer must have probable cause to believe that a person is driving, operating, or in physical control of a motor vehicle in violation of Minn.Stat. § 169.121 in order to require a test under the implied consent law. Minn.Stat. § 169.123, subd. 2 (Supp.1985). The trial court determined that the officer had probable cause to believe that appellant was in physical control of the vehicle.

Probable cause exists when all the facts and circumstances would warrant a cautious person to believe that a person was driving, operating, or in physical control of a motor vehicle while under the influence. *Johnson v. Commissioner of Public Safety,* 366 N.W.2d 347, 350 (Minn.Ct.App. 1985). The legislature has indicated that the term "physical control" should be applied to the broadest possible range of conduct. *State, Department of Public Safety v. Juncewski,* 308 N.W.2d 316, 319 (Minn. 1981).

One purpose of the "physical control" language is to prevent a drunken individual

from getting into the vehicle except as a passenger. *Id.* at 320. Further, these laws are remedial laws, which must be liberally interpreted in favor of the public interest and against the private interests of the drivers involved. *Id.* at 319. Some of the situations in which the "physical control" issues arise include such common situations as:

1) the motor running; or 2) keys in the ignition; or 3) cars parked or stalled on or near the roadway; or 4) cars parked in some predicament such as a ditch, swamp or snowbank, indicating to the officer arriving on the scene that the driver had recently put the vehicle there through erratic driving.

*State, City of Falcon Heights v. Pazderski,* 352 N.W.2d 85, 88 (Minn.Ct.App.1984).

■ Appellant argues that in this case there are no factors indicating he was in physical control of the motor vehicle so as to require him to submit to testing. He was asleep in the car, which was allegedly legally parked in a parking lot off the road, there were no visible signs of an accident, the officer did not observe any driving conduct, the vehicle's engine was not running, the lights were not on, and appellant said he was not driving. Appellant points to a number of scenarios which could have occurred.

The issue, however, which we are addressing is whether the police officer had probable cause to believe appellant was in physical control of the motor vehicle. In doing so, we must evaluate whether such a finding will further the objective of deterring drunken drivers from getting in their vehicles except as passengers. *Pazderski,* 352 N.W.2d at 88 (citing *Juncewski,* 308 N.W.2d at 320).

In *Pazderski,* this court reversed a conviction under Minn.Stat. § 169.121, subd. 1, based on the determination that Pazderski used the motor vehicle parked in his driveway as a place to sleep. Considering such a use as physical control would not further the purposes of the statute. In contrast, appellant here was found sleeping in the car in a car wash parking lot. These facts

present a situation in which appellant could still be considered a threat to the public since he could have set out on an inebriated journey at any moment. *Martin v. Commissioner of Public Safety*, 358 N.W.2d 734, 737 (Minn.Ct.App.1984).

Appellant argues that unlike *Martin,* the keys were not in his possession. We note, however, that while the trial court did not make findings on the location of the keys, the officer did testify that he found the keys in appellant's pocket when he frisked him. The credibility of the officer's statement is a determination for the trier of fact. *See State v. Evers*, 293 Minn. 518, 198 N.W.2d 541 (1972).

The facts presented in this case are sufficient to provide the officer with probable cause to believe that appellant was in physical control of the motor vehicle while under the influence of alcohol.

### DECISION

The trial court's decision sustaining the revocation of appellant's driving privileges is affirmed.

Affirmed.