## STATE v. PAUL TURNER.[1]

January 17, 1936.

No. 30,540.

*L. O. Smith,* for appellant.

*R. S. Wiggin,* City Attorney, and *Leo P. McHale,* Assistant City Attorney, for the State.

JULIUS J. OLSON, JUSTICE.

Defendant was convicted of violating a city ordinance and sentenced to serve a term of 90 days in the Minneapolis workhouse. He appeals.

The ordinance under which the prosecution was had reads:

"No person shall, within the limits of the city of Minneapolis (a) offer to secure or secure another for the purpose of prostitution or for any other lewd or indecent act; or (b) loiter in or near any thoroughfare or public or private place for the purpose of inducing, enticing or procuring another to commit prostitution, lewdness, unlawful sexual intercourse, or any other indecent act; or (c) in any manner induce, entice or procure a person who is in any thoroughfare or public or private place to commit any such act; or (d) receive or offer or agree to receive, or carry or offer or agree to carry, any person to or into any place, structure, house, building, or conveyance for the purpose of prostitution, assignation, lewdness or

[1]Reported in 264 N. W. 681.

other indecent act, or knowingly permit any person to remain there for any such purpose; or (e) in any way aid, abet or participate in the doing of any of the acts or things in this section above mentioned."

Then follows the provision respecting punishment to be imposed for violation.

The case was tried before the court without a jury. The validity of the ordinance is not questioned. The only issue presented upon appeal is whether the evidence sustains the conviction. Briefly summarized, the evidence disclosed that defendant, a colored man, was living with one Opal Berkowitz, a white woman 24 years of age, admittedly not his wife, for a period of several months. He had arranged for the renting of the room. This they both occupied. There was but one bed. Opal is admittedly, and has been over a period of time, a public prostitute. Her earnings garnered from this source were used to pay for the rent of the room, buying clothes and other incidentals, and by sharing the same with defendant.

At the time these parties were arrested, April 24, 1935, both were in this room. When the officer making the arrest rapped at the door defendant came thereto dressed in his pajamas only. The trial was commenced the following day, April 25, and the testimony of Opal heard in part. At defendant's request, an adjournment was then taken until April 30. When the trial was resumed her story had so changed as to leave no doubt that she had been interviewed by someone out of harmony with the prosecution. She then claimed that she had not lived with defendant at all. But she freely admitted her professional engagements as a prostitute and that the defendant well knew her to be such. She also admitted having paid him out of her earnings but said that these were loans he had made to her and that she simply repaid them. The owner of the apartment testified that both Opal and defendant lived in the room over a period of some three months.

Defendant admitted that he knew Opal to be a prostitute, also that he was very fond of her, "we were sweethearts." He had many "lady friends but none had ever been steady before," reference being had to Opal.

Defendant of course denies improper conduct. He claims that he is the son of a Methodist minister; that he is a college graduate; that he is a musician and has been so engaged over a period of years. He had rendered service in a "walkathon" affair; had a half interest in "a barbecue at 621 Lyndale." He had traveled considerably. He claims to have delivered lectures and taken part in many concerts. His lectures were claimed to have been on "sociological subjects." Further reference to the testimony is not necessary. Obviously only a fact question was involved. The time, place, and circumstances when the officer made the arrest of these parties are such as to lead any unbiased mind to the conclusion reached by the trial court. One would have to be extremely credulous to permit the defendant to get away from the offense charged upon the showing here made.

In State v. Cavett, 171 Minn. 505, 214 N. W. 479, a part of this ordinance was considered by this court and conviction thereunder sustained. We think the evidence in the instant case is fully as persuasive as was the evidence adduced in the cited case.

Affirmed.