STATE of Minnesota, City of
Minneapolis, Respondents,

v.

Robert Richard REUER, Appellant.

No. C6–86–856.

Court of Appeals of Minnesota.

Nov. 25, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert Alfton, Minneapolis City Atty., James H. Tumulty, Asst. City Atty., Minneapolis, for respondents.

Allan Caplan, Alex Andrea, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and LANSING and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Robert Reuer appeals from misdemeanor convictions for simple assault, indecent conduct, and trespass and contends the trial court abused its discretion by admitting evidence of other crimes and there was insufficient evidence. We affirm.

## FACTS

Two complaints filed in Hennepin County Municipal Court charged appellant with a total of five misdemeanor offenses. The first complaint alleged that on August 10, 1985, appellant committed three crimes against R.O.: fifth degree assault, Minn. Stat. § 609.224(1) (1984); indecent conduct, Mpls. City Code § 385.160(a); and trespass, Minn.Stat. § 609.605(6) (1984). The second complaint alleged that on July 21, 1985, he committed fifth degree assault and indecent conduct against J.F. Separate trials were scheduled on each complaint.

The State sought to admit evidence of appellant's alleged crimes against R.O. at his first trial on the two charges involving J.F. The prosecutor summarized both incidents and argued that appellant's conduct constituted a plan of operation that he had "worked out in advance." The trial court found clear and convincing evidence of other crimes and "striking" similarities between the two incidents. The most similar portions of the incident involving R.O. were ruled admissible, while other portions were excluded as overly prejudicial. On the advice of counsel, appellant then waived both his right to separate trials and his right to a jury trial.

J.F. testified that appellant took her out to dinner on July 20, 1985. He came to her apartment to pick her up and she poured them both a glass of wine before she went into the bedroom to change clothes. When she came out, he handed her a glass; she questioned whether it was her glass because there was more in it than before. At the restaurant, J.F.'s head was pounding, her mouth was dry, she felt sleepy, and things were "just spinning around" so she went to the restroom. When she returned, her wine glass was again "more full than before." Appellant said he had given her "some of his" because he was driving and didn't want to drink too much. J.F. took a few more sips of wine and they ate a salad; then she asked appellant to take her home because she didn't feel well.

Appellant instead took J.F. to his house and told her that if she came in and sat down for a while, she would feel better. J.F. sat down on a couch in the living room and then either fell asleep or passed out. She testified that:

> I awoke to a sharp pain in my vagina area and he—you know, I woke up and I was crying and upset and he said, "It's just my finger! It's just my finger!" * * I was upset. He said, "Well please don't cry," and I said, "I just want to go home," he says, "Well just, you know, just relax. I didn't mean it."

J.F. knew there had been sexual contact "because I felt the presence in there and I did feel pain." After appellant took J.F. home, he said: "Well, I suppose tomorrow the police are going to be knocking on my door." When J.F. undressed to go to bed, she discovered that her pantyhose were ripped.

R.O. went to dinner with appellant on August 10, 1985. When they arrived at the restaurant, she went to the restroom and he bought some drinks. R.O. noticed that her drink, a Tom Collins, was "kind of weird" because the color of the drink was a very light pink and it was "really strong." After she drank it, she felt dizzy, tired, and nauseous and asked appellant to take her home. They stopped at his house to pick up a car she was going to use the next day. He told her to wait in the living room because he had to charge the battery. She let him give her a backrub, but when he touched her legs, she sat up and asked to go home. R.O. drove one of appellant's cars home while he followed her in another car.

When they arrived at R.O.'s house, appellant walked her to the door, asked to use her bathroom, and told her to change into a nightgown while he was there so he would know she was okay. She went into her bedroom, closed the door, and started getting ready to go to bed. She was standing in her bra and underwear, ready to put her nightgown over her head, when appellant threw open the door, ran towards her, and threw her on the bed. He pinned her down, kissed her, and touched her "all over." When she screamed, appellant

jumped up, ran to the door, and said "I'm sorry, I'm sorry, don't call the police." After he left, R.O. locked her door and went to bed.

When R.O. awoke at 3:45 a.m. she saw appellant standing in her bedroom. She later discovered that he had broken a hook on a window to get into her house. He called her name, then walked across the room and handed her a mascara that she had apparently left in his car. He left when she told him to get out.

Appellant testified and denied that he touched J.F.'s glass when they were at her apartment or "doctored" her drinks, but later admitted on cross-examination that he did hand J.F. her glass. He said he only gave J.F. a backrub:

> I mean I was rubbing her back, and rubbing her, you know, rubbing her arms and rubbing her legs and her buttocks, and stuff like that.

According to appellant, J.F. then jumped up, accused appellant of "feeling her out," and asked him to take her home. He said J.F. was not asleep, he did not touch her between her legs and never told her he had done so, but that his hands were under J.F.'s dress when he was rubbing her buttocks.

The trial court found appellant guilty on all five counts, merged the four convictions for assault and indecent conduct into two convictions, and imposed three consecutive 90–day sentences for indecent conduct and trespass against R.O. and assault against J.F. Appellant brought this appeal from the convictions and also petitioned for discretionary review of his misdemeanor sentences. Discretionary review was denied by an order of June 17, 1986 and review of the sentences in this appeal was denied by an order of October 2, 1986.

## ISSUES

1. Was there sufficient evidence to support the trial court's finding that appellant was guilty of fifth degree assault and indecent conduct?

2. Has appellant shown that the trial court clearly abused its discretion by admitting evidence of his other crimes?

## ANALYSIS

### I.

When the trial court sits as finder of fact, its verdict is entitled to the same weight as that accorded a jury. *State v. Thurmer*, 348 N.W.2d 776, 778 (Minn.Ct. App.1984). Here the trial court found appellant guilty of fifth degree assault for his conduct with J.F. Assault [1] is defined by Minn.Stat. § 609.224, subd. 1 (1984), which provides that:

> Whoever does any of the following commits an assault and is guilty of a misdemeanor:
>
> (1) commits an act with intent to cause fear in another of immediate bodily harm or death * * *.

*Id.; see also* Minn.Stat. § 609.02, subd. 10 (1984). The court also found appellant guilty of indecent conduct for the same acts under Minneapolis City Code § 385.-160(a), which prohibits "lewd, lascivious, or immoral conduct." *Id.*

Appellant contends there was insufficient evidence to support those verdicts.[2] He argues that he did not commit an assault because he could not have intended to cause fear in J.F. when she was unconscious, and that his conduct was no more immoral than any other alleged crime. We find little merit in either contention.

 Implicit in the trial court's guilty verdict is a finding that appellant had the necessary criminal intent: "a purpose to do the thing or cause the result specified * *." *See* Minn.Stat. § 609.02, subd. 9(4) (1984). Here the trial court had to find that appellant intended his actions to cause fear of

---

1. At common law "the taking of indecent liberties with the person of a female without her consent" was an assault. *State v. West*, 39 Minn. 321, 322, 40 N.W. 249–50 (1888). The offense is now defined by statute.

2. Appellant does not challenge his convictions for fifth degree assault, indecent conduct and trespass against R.O.

bodily harm in J.F. If she was unconscious during the entire incident, proof of the intent element of the charged offense[3] might be impossible. However, J.F. testified that she woke up and felt a sharp pain in her vagina, which established she was conscious while appellant was penetrating her. We must assume that the trial court believed J.F.'s version of the incident. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978). The court could have inferred the requisite criminal intent from appellant's actions and the circumstances. *State v. O'Brien*, 352 N.W.2d 130, 132 (Minn.Ct. App.1984).

Moreover, we agree with the trial court that appellant was guilty of indecent conduct. *See State v. Turner*, 196 Minn. 176, 264 N.W. 681 (1936). The *Turner* court's reasoning is fully applicable to the facts of this case:

> The time, place, and circumstances * * * are such as to lead any unbiased mind to the conclusion reached by the trial court. One would have to be extremely credulous to permit the defendant to get away from the offense charged upon the showing here made.

*Id.* at 178, 264 N.W. at 682.

## II.

The trial court must consider and weigh several factors in determining whether evidence of other crimes is admissible. *State v. Doughman*, 384 N.W.2d 450, 454 (Minn.1986). A trial court's admission of such evidence will not be reversed unless an abuse of discretion is clearly shown. *Id.*

Here the trial court admitted limited evidence of crimes against R.O. at appellant's trial on charges involving J.F. Appellant contends the trial court abused its discretion when it determined that the probative value of the evidence outweighed its

prejudicial effect. After considering the record in light of the relevant factors, we conclude that appellant has not shown a clear abuse of discretion. That appellant later made a tactical decision to waive some of his rights because the trial court admitted evidence of his other crimes is irrelevant to the admissibility of that evidence.

Appellant also contends he was improperly sentenced[4] for both trespass and indecent conduct for his conduct against R.O. because those crimes were part of the same behavioral incident. *See* Minn.Stat. § 609.035 (1984). The record shows appellant first entered R.O.'s home with her permission and assaulted her, then returned two hours later and committed a trespass but not an assault. The two offenses were not a single behavioral incident because they were sufficiently separated in time and involved different criminal objectives. *State v. Zuehlke*, 320 N.W.2d 79, 82 (Minn.1982).

## DECISION

There was sufficient evidence to support the verdicts and appellant did not show that the trial court clearly abused its discretion by admitting evidence of his other crimes.

Affirmed.

---

3. Appellant was not charged with inflicting bodily harm. *See* Minn.Stat. § 609.224, subd. 1(2) (1984).

4. This court twice denied review of appellant's misdemeanor sentences because he made no argument in support of his requests for discretionary review. We will nevertheless consider his sentences at this time. *See* Minn.R.Crim.P. 28.02, subd. 11.