STATE of Minnesota, Respondent,

v.

Sandra Sylvia STARFIELD, Appellant.

No. C5–90–2182.

Court of Appeals of Minnesota.

June 11, 1991.

Review Granted Aug. 2, 1991.

Hubert H. Humphry, III, Atty. Gen., St. Paul, R. Donald Kelly, White Bear Lake, for respondent.

John M. Stuart, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by AMUNDSON, P.J., and HUSPENI and RANDALL, JJ.

RANDALL, Judge.

## FACTS

Following a jury trial, Sandra S. Starfield, appellant, was convicted of a violation of Minn.Stat. § 169.121, subd. 1(a) (1988) (physical control of a motor vehicle while under the influence of alcohol). Appellant's license had been suspended prior to this incident due to an implied consent violation, and therefore, this offense was elevated from a misdemeanor to a gross misdemeanor. Minn.Stat. § .169.129 (1988).

On February 24, 1989, Ramsey County Sheriff's Deputies were called to the scene of an accident in Gem Lake. The state alleged appellant had driven her automobile into a ditch while drunk. At trial, appellant conceded she was under the influence of alcohol, but contended her son had been driving when the car went into the ditch (because of a flat tire) and claims at all times she was just a passenger.

According to one of the deputy sheriffs sent to the scene, the car was found in a ditch with headlights on, but with the en-

gine off. Appellant was seated behind the steering wheel, there were no keys in the ignition, the car's wheels were firmly buried in snow, and the car could not move. When appellant was asked by the deputies whether she had been driving she responded, "no." Appellant refused to submit to a blood alcohol test, and was taken to the Ramsey County Jail. At the jail, the keys to the car were found in her coat, but she again said she had not been driving.

Appellant testified and denied ever driving or being in physical control of the vehicle. Her son testified he had picked appellant up at a bar around 1:00 a.m., and as he was driving home, the right front tire blew out and the car went into a snow filled ditch. After he could not get the car to move, he decided to walk to a Perkins Restaurant to call for assistance. Appellant stayed with the car, and while her son was gone seeking help, the deputy sheriffs arrived.

At the close of the state's case, the trial court dismissed the charge that appellant had driven while intoxicated. The jury was presented only with the issue of whether appellant exercised "physical control" over a motor vehicle while under the influence of alcohol. Appellant requested a special instruction which set out her theory of defense. The trial court denied the request.

The theory of appellant's defense was that she could not have been in "physical control" of the vehicle because up until the time her car went into a ditch she was only a passenger,[1] and thereafter, the car was not operable or capable of movement.

The appellant requested the following instruction be given to the jury regarding "physical control":

The purpose behind Minnesota Statute § 169.121, Subd. 1, is to deter drunken individuals from getting into their vehicles except as passengers. The state must prove beyond a reasonable doubt

that the Defendant was at or near her vehicle for the purpose of operating it or controlling it. Further, the state must prove beyond a reasonable doubt that *the Defendant's car was capable of being operated.*

(Emphasis added).

The trial court denied appellant's request, and its instruction to the jury on "physical control", as follows, did not incorporate appellant's operability defense:

* * * A person is in physical control of a motor vehicle when he or she is present in a vehicle and is in a position to either direct the movement of the vehicle or keep the vehicle from moving. It is not necessary for the engine to be running in order for a person to be in physical control of a motor vehicle.

### ISSUE

Where the record contains evidence that appellant was a mere passenger in a car that went off the road and became stuck in a ditch, did the trial court err when it denied appellant's requested jury instruction which reflected the theory of her defense that if the car was inoperable she was not in "physical control" of the vehicle when she was left alone in it?

### ANALYSIS

The theory of the defense was that appellant was never in control of the vehicle prior to the flat tire that forced the car into the ditch. Thereafter, appellant could not have exercised physical control because the car was inoperable.

There was evidence before the jury which went to the issue of operability. The jury heard of the flat tire; the testimony by appellant's son that he was unable to get the car out of the ditch under its own power; a deputy sheriff's testimony that the car was buried in the snow; and that a towing vehicle was needed to extract the car from the ditch. The jury could have

---

**1.** The trial court's dismissal of the charge of DUI means that the trial judge found, as a matter of law, that the state had not presented enough evidence even to get to a jury on the question of whether appellant drove the car into the ditch.

Thus, for purposes of determining whether appellant should have received the instruction requested, we assume that she was a passenger in the vehicle when it went off the road.

found the car inoperable during the time appellant was alone with the car.

Appellant requested a jury instruction which presented her operability theory to the jury. It is settled that a defendant is entitled to an instruction on its theory of the case if there is some evidence before the jury to support that theory. *State v. Ruud,* 259 N.W.2d 567, 578 (Minn.1977); *State v. Nunn,* 351 N.W.2d 16, 19 (Minn. App.1984). However, a trial court is not required to give an instruction which misstates the law. *State v. Evans,* 347 N.W.2d 813, 817 (Minn.App.1984).

Does Minn.Stat. § 169.121, subd. 1(a) require a motor vehicle to be operable at some point during the period of a defendant's dominion over the car in order to find a violation of the section? If mere proximity to a motor vehicle at *any* time while under the influence of alcohol is sufficient to find "physical control," then the answer to the central issue is that operability of the vehicle is not required by Minn. Stat. § 169.121, subd. 1(a).

■ However, the answer to this question is that "mere proximity" to a motor vehicle by an inebriated individual is not sufficient, at all time and exclusive of all other facts, to find a per se violation of Minn.Stat. § 169.121, subd. 1(a). *See e.g., Roberts v. Comm'r of Public Safety,* 371 N.W.2d 605 (Minn.App.1985), *pet. for rev. denied* (Minn. Oct. 11, 1985) (appellant sleeping off intoxication in car with keys on dash but with engine inoperable was not in physical control of the car); *State v. Pazderski,* 352 N.W.2d 85 (Minn.App.1984) (appellant who was under the influence of alcohol but who was home and only returned to his car to sleep therein because of domestic discord was not in violation of Minn.Stat. § 169.121, subd. 1(a)).

■ Minn.Stat. § 169.121, subd. 1(a) is not a net blindly cast to ensnare every individual who, under the influence of alcohol, is near a motor vehicle. Individuals who, as mere passengers, are complying with the law in Minnesota against drinking and driving should not fear Minn.Stat. § 169.121, subd. 1(a). There *is no law* in Minnesota against drinking and being a passenger. If there was, Minnesota's campaign to encourage the use of designated drivers would be a waste of taxpayer's money.

This court has recognized that Minn.Stat. § 169.121, subd. 1(a) has limitations in its application:

> [w]e must determine *whether the policy concerns* of Minn.Stat. § 169.121, subd. 1 *are served by finding the appellant was in physical control* of his car within the meaning of the statute.

*Pazderski,* 352 N.W.2d at 88 (emphasis added). *See also State v. Maletich,* 384 N.W.2d 586, 588 (Minn.App.1986); *Martin v. Comm'r of Public Safety,* 358 N.W.2d 734, 737 (Minn.App.1984).

Minn.Stat. § 169.121, subd. 1(a) must, of necessity, have the elements of fairness and logic in its application. Laws are not supposed to be arbitrary and capricious. If the statute is blindly applied in all cases, recitation of the policy behind the statute would be hollow.

The purpose behind Minn.Stat. § 169.121, subd. 1 is to deter drunken individuals from getting into their vehicles *except as passengers*.

\* \* \* \* \* \*

> "[T]he ' \* \* \* physical control' offense is a preventive measure intended to deter the drunken driver. One who has been drinking intoxicating liquor should not be encouraged to test his driving ability on the highway, even for a short distance, where his life and the lives of others hang in the balance." [*State, Dept. of Public Safety v. Juncewski,* 308 N.W.2d 316, 320 (Minn.1981)].

*Pazderski,* 352 N.W.2d at 88 (emphasis in original). *See also Ledin v. Comm'r of Public Safety,* 393 N.W.2d 433, 435 (Minn. App.1986); *Maletich,* 384 N.W.2d at 588; *Berns v. Comm'r of Public Safety,* 355 N.W.2d 493, 495 (Minn.App.1984). This policy has also been expressed another way:

> [t]he statutory provision regarding physical control of a vehicle, *see* Minn.Stat. § 169.121, subd. 1 (1984), *addresses the concern that an intoxicated driver*

* * * who is *in physical control* of a vehicle *may continue on her way in an intoxicated state.*

*Bale v. Comm'r of Public Safety,* 385 N.W.2d 870, 873 (Minn.App.1986) (emphasis added).

The legislative policy of deterring drunk individuals from getting into their cars, except as passengers, is sound and supported by case law. Minnesota's "physical control" case law establishes that each time a defendant was found to be in "physical control" of a motor vehicle, circumstances either established that *he/she drove the vehicle to the location or predicament in which the authorities discovered the driver,* or *he/she had the present ability to continue on an inebriated journey at any moment.*

Consistent with case law, two cases where physical control was lacking have been the cases of *Roberts,* 371 N.W.2d at 607, and *Pazderski,* 352 N.W.2d at 89. In *Roberts,* the driver was found not to be in physical control because his car was inoperable, and in *Pazderski* the driver was not in physical control because (while the car was parked in his own yard), he crawled into the back seat of his car only to sleep so as to avoid marital discord and not to drive.

■■ Here, after the completion of testimony, the trial court dismissed the charge that appellant had been driving while intoxicated. The trial court found the evidence was insufficient, as a matter of law, to support the state's theory that appellant drove the car into the ditch. The evidence does support the defense theory that appellant's son was driving the car when it came to rest in the snow filled ditch. So, up to that point, the deterrent policy of Minn. Stat. § 169.121, subd. 1(a) was fairly served. The evidence supports appellant's theory that she had properly procured a designated driver and had gotten into her car only as a passenger.

Is the deterrent policy of Minn.Stat. § 169.121, subd. 1(a) served by finding appellant was in "physical control" within the meaning of the statute if the finder of fact finds the car was never operable while appellant was in it alone, the only time she was arguably in physical control?

The state argues appellant was found alone, intoxicated, in a car with the keys in her possession, and therefore, whether the car was operable or not, she "exercised dominion" over the car and thus is guilty of violating the "physical control" statute. We recognize the state's argument, but cannot apply the law blindly. The state's argument, carried to its logical extreme, with no room for common sense, does away with the legislative policy of encouraging designated drivers. There becomes no difference between a passenger and a driver. By mechanically applying such factors as keys in the car, engine running, access to vehicle controls, proximity to steering wheel, et cetera, to find "physical control," all inebriated passengers are guilty (regardless of the condition of the driver) of the offense of "physical control." No law could have this inane result.

There must be a way to encourage and reward intoxicated individuals who ask a sober individual to drive for them. One way is to give the jury, if the evidence is there to support it, the defendant driver's theory of the case. Here, on these facts, an instruction that the car had to be operable at the time appellant was in it alone and it was under her dominion would have been an accurate and fair interpretation of the "physical control" statute.

If you are nothing more than a drunk passenger, you are guilty only of public drunkenness. Public drunkenness has not been an offense in the State of Minnesota for years. Minn.Stat. § 340A.902 (1988). Minn.Stat. § 169.121, subd. 1(a), in light of sound legislative intent to encourage designated drivers, must be construed to afford protection for inebriated passengers who have acted properly by obtaining another to drive. Since the jury was not to consider whether appellant was a driver, but only whether appellant was in "physical control" of the car, the legislative policy of encouraging designated drivers was negated.

This case is a good example of the "common sense" approach Minnesotans have to-

ward dealing with winter conditions and winter driving. As in the present case, when a car goes off the road and becomes stuck in snow, it makes sense for the sober, designated driver to be the one who goes for help. It only makes good sense for the passenger(s) to stay in the relative warmth of the stuck vehicle, particularly if they are parents with small children, elderly, inebriated, or in any other way disabled, sick, or handicapped. The state's argument makes all these named individuals, if they had earlier been drinking, guilty of a crime, even though admittedly they were never in the car other than as a passenger and were only left alone in it because the driver had gone for help. An arbitrary application of the "physical control" statute to these facts would be a criminal approach to criminal law.

In examining this record, we are guided by *Roberts.* The appellant in *Roberts* was at a ballroom and became heavily intoxicated. His friends took his car keys away and placed him in his car to sleep. When the bar closed, Roberts was still passed out, so his friends disconnected the coil wire on his car (rendering the vehicle physically incapable of starting and running) and left the keys on the dash. This court ruled that Roberts was not in "physical control" of his car within the meaning of Minn.Stat. § 169.121, subd. 1(a) because:

> [There, we had] a car *incapable of being operated.* The effect is the same as if Roberts had been discovered asleep in a wagon. Our recent decision in *Palme v. [Comm'r] of Public Safety,* 366 N.W.2d 343 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. June 24, 1985), can be distinguished. In that case, the driver if left alone, *could have driven* the truck, which was *operational.*

*Roberts,* 371 N.W.2d at 607 (emphasis added).

Here, the trial court found the evidence was insufficient to conclude appellant was the driver when the car went into the ditch. There was evidence that appellant was just a passenger prior to the car going in the ditch, and that while her son went off to get help, appellant was left alone with an inoperable vehicle, just as in *Roberts.* The record supports the inference that appellant's car was even more inoperable than the car in *Roberts.* The evidence would support a finding that appellant's car was incapable of moving without towing assistance. In *Roberts,* the car could have been made readily operable by merely reinserting the coil wire.

There was evidence that appellant neither drove her vehicle into its predicament nor that she had the ability to start the car and continue on an inebriated journey after she was left alone.

The state contends the operability of a vehicle need not be considered in "physical control" cases and cites to *State v. Woodward,* 408 N.W.2d 927 (Minn.App.1987). In *Woodward,* a car was discovered parked along I–94 with its hazard lights flashing and its trunk open. The keys were in the ignition, and the engine was running. The car had a flat tire, and appellant was standing at the rear of the car. Appellant told the arresting officer that she had just gotten off of work and was driving home. The state argues *Woodward* stands for the proposition that the operable status of a car is not a relevant consideration when it quotes:

> [A] person [is] in physical control of a vehicle if he has the means to initiate any movement of that vehicle and he is in close proximity to the operating controls of the vehicle, and this is true whether the vehicle can be driven upon the highway at that point or not.

*Woodward,* 408 N.W.2d at 928.

However, the next paragraph of the opinion puts the above quote into proper context. The *Woodward* decision did not sustain a "physical control" finding although a flat tire made the car inoperable. On the contrary, the *Woodward* decision found "physical control" *because the car was operable:*

> That Woodward's car had a flat tire does not mean the car was incapable of movement and incapable of posing a threat to public safety. Woodward's car was not mechanically inoperable simply

because it could not successfully reach her intended destination.

Woodward was found alone, exercising control over her vehicle. The keys were in the ignition and the engine running. *She was fully capable of putting the car in motion.*   * * *

*Id.* (emphasis added). Woodward could have changed the tire and continue on her way in an inebriated state, or put the car back in motion on the highway with the flat tire. Woodward's car was nowhere near the useless condition of appellant's. Further, Woodward is the person who drove the car to the point of predicament, a common thread in those cases where the state has successfully prevailed over "inoperable" arguments of drinking drivers.

The evidence here shows we do not have a drinking driver, rather, only a drinking passenger. Operability was a factual determination to entrust to a jury, where here there is solid evidence to establish the defendant was not the driver during the time the car was being driven. We find appellant was entitled to an instruction on her theory of the case.

As a court of review we are not asked to determine if appellant's car in that snow filled ditch was operable. That is for the jury. We only decide whether the trial court should have instructed the jury in accord with appellant's inoperability defense, and if the failure to do so, taking the record as a whole, necessitates a new trial. On this record, it was error not to give appellant's requested jury instruction, and the error was not harmless by proof beyond a reasonable doubt. The missing jury instruction was integral to appellant's defense, and the jury, although not bound to accept her theory, should have been instructed properly.

■ A trial court is not required to give an instruction in the exact language as that requested so long as the principles requested by a defendant are contained in the charge. *See State v. Webber,* 272 Minn. 243, 254, 137 N.W.2d 527, 535 (1965); *Ruud,* 259 N.W.2d at 578.

The appellant requested the following instruction be given to the jury regarding "physical control":

The purpose behind Minnesota Statute § 169.121, Subd. 1, is to deter drunken individuals from getting into their vehicles except as passengers. The state must prove beyond a reasonable doubt that the Defendant was at or near her vehicle for the purpose of operating it or controlling it. Further, the state must prove beyond a reasonable doubt that *the Defendant's car was capable of being operated.*

(Emphasis added).

As a court of review, we do not dictate the exact jury instruction for the trial court to give at appellant's new trial. We realize the evidence admitted in appellant's next trial may differ from that of the first trial. The evidence that the trial judge will find relevant and admissible in appellant's case, yet to be tried, cannot be predicted with accuracy. The trial court will, after the conclusion of the evidence in the next trial, have the burden of fashioning fair jury instructions for that case. However, we do direct the trial court, generally, to take into account evidence of appellant's status as a passenger prior to the car entering the ditch and, together with any evidence admitted regarding the car's potential for operation by appellant, fashion a fair instruction that will allow appellant's attorney to fully argue her theory of the case.

### DECISION

When the evidence does not support a charge that defendant was a driver, the question of operability at the time defendant was alone in the vehicle and it was under her dominion becomes a fact issue. The question of operability should have been decided by the factfinder. Since the jury was not instructed in accord with appellant's defense theory, and since appellant presented enough evidence to support her theory, we vacate the verdict and remand for a new trial.

Reversed and remanded.