STATE of Minnesota, Petitioner,
Appellant,

v.

Sandra Sylvia STARFIELD, Respondent.

No. C5–90–2182.

Supreme Court of Minnesota.

March 13, 1992.

Hubert H. Humphrey, III, Atty. Gen., and Douglas B. Meslow, Sweeney and Borer, P.A., St. Paul, for petitioner, appellant.

John M. Stuart, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for respondent.

James C. Wicker, Minneapolis, for amicus curiae, Mothers Against Drunk Driving.

SIMONETT, Justice.

There may be circumstances where operability of a vehicle is relevant on the issue of whether a person has physical control of a motor vehicle while under the influence of alcohol. In this case failure to give a supplementary instruction on physical control factors was not requested, nor was it error not to have given such an instruction. The "physical control" conviction is, therefore, reinstated and the court of appeals' decision vacating such conviction is reversed.

On February 24, 1989, at around 1:47 a.m., Ramsey County deputy sheriffs responded to a report of a car in the ditch in Gem Lake. The car was stuck in a snow-filled ditch. The headlights were on, but the motor was not running. Deputy Lopez approached the driver's side of the car and testified he found defendant Sandra Starfield sitting in the driver's seat. Through a closed window, Lopez asked Starfield if she was okay. Starfield replied that she was not hurt. Lopez then testified he opened the car door and asked for Starfield's driver's license. Starfield could not find it in her purse. From the odor of alcohol and bloodshot eyes, Lopez believed that Starfield was intoxicated. Lopez noticed the keys were not in the ignition, so he asked for them. Starfield replied that the keys were "in the car," but Lopez could not find them.

Minutes later more deputies arrived. A pick-up truck came by and the driver offered to pull Starfield's car out of the ditch, but the offer was not accepted. After being given an implied consent advisory, Starfield refused to submit to a blood alcohol test. While in the squad car, when asked if she was operating the car, she replied, "Nope," but did not elaborate. At the Ramsey County Jail, a set of car keys was found in Starfield's coat pocket. While being booked, Starfield contended she was not driving the car; but she never mentioned that she was waiting in the car for her son.

Eventually, Starfield's car was removed from the ditch by a tow truck. One of the deputies testified that the car was stuck in the snow, and that Starfield could not have driven the car out of the snow.

The next day, Starfield was questioned (after a *Miranda* warning) and, for the first time, said that her son was driving the car when it went into the ditch. She said her son had gone for help and had left her in the car. An officer also testified that Starfield told him she had tried to drive the car out of the ditch.

At trial, Starfield testified that her son had driven the car into the ditch, had then gone for help, and that the deputies arrived while the son was gone. Starfield's son, Scott, corroborated his mother's story. He said the car had a tire blow-out, causing the car to go into the ditch, and that he had then walked to a Perkins restaurant to call a friend for help. On cross-examination, the prosecution inquired of Scott why he had left his intoxicated mother in the car to walk to Perkins one-half mile away rather

than seek help at a house near the car; why he had shut off the motor and heater in sub-zero temperatures before going to Perkins; and why he would walk through a snow-filled field to get to Perkins rather than walk along the road.

Defendant was charged under Minn.Stat. § 169.121, subd. 1(a) (Supp.1989), making it a crime to "drive, operate, or be in physical control of any motor vehicle * * * when the person is under the influence of alcohol." At the close of the State's case, the trial judge granted defendant Starfield's motion to acquit on the charge of "driving" under the influence of alcohol, reasoning that the evidence was insufficient to support such a conviction. Consequently, the case went to the jury solely on the question whether Starfield was in "physical control" of a motor vehicle while under the influence of alcohol.

Defense counsel requested the following instruction on physical control:

The purpose behind Minn.Stat. § 169.121, subd. 1 is to deter drunken individuals from getting into their vehicles except as passengers. The State must prove beyond a reasonable doubt that the Defendant was at or near her vehicle for the purpose of operating it or controlling it. Further, the State must prove beyond a reasonable doubt that the Defendant's car was capable of being operated.

The trial court denied the requested instruction and instead gave an instruction based on 10A Minnesota Practice, CRIM-JIG 29.02 (3d ed. 1990):

A person is in physical control of a motor vehicle when he or she is present in a vehicle and is in a position to either direct the movement of the vehicle or keep the vehicle from moving. It is not necessary for the engine to be running in order for a person to be in physical control of a motor vehicle.

While deliberating, the jury returned with the following written question: "Does the car have to be *able* to be moved for a person to have physical control of the vehicle?" (Emphasis in the original.) The trial judge responded by repeating his earlier instruction. The jury returned a verdict of guilty.

On appeal, the court of appeals vacated the conviction and remanded for a new trial. *State v. Starfield*, 472 N.W.2d 143 (Minn.App.1991). For there to be "physical control," the court concluded, the prosecution must show the defendant drove the car to the location or into the predicament in which it was found, or that the driver had the ability to continue on an inebriated journey at any moment. Because the trial court had dismissed the "driving" charge, the court of appeals assumed Starfield to be a passenger in her own car, and as a passenger, she was entitled to an instruction on operability. The appeals panel declined to suggest an appropriate instruction, but noted that in fashioning an instruction the trial court should take into account evidence that Starfield was merely a passenger in a disabled vehicle. *Id.* at 148. We granted the State's petition for further review.

Arguably, the evidence was sufficient to have submitted to the jury the charge of "driving" under the influence; however, this is not what happened. The only charge here is having "physical control" of a motor vehicle. The issue then becomes whether the physical control contemplated by the statute includes a motor vehicle so stuck in a snow-filled ditch that it cannot move. In the following discussion, we will use the terms "inoperable" or "disabled" to refer either to a mechanical breakdown of the car or to the car being in some predicament where it cannot move, such as being out of gas or stuck in the snow or mud.

The term "physical control" is more comprehensive than either "drive" or "operate." *State v. Harris*, 295 Minn. 38, 43, 202 N.W.2d 878, 881 (1972). In *State v. Juncewski*, 308 N.W.2d 316, 319 (Minn. 1981), the last time we spoke on the subject, we said that the term "physical control" should be given "the broadest possible effect" and that the intent was to deter inebriated persons from getting into vehicles except as passengers. *Juncewski* did not involve, however, a disabled vehicle. Since then the court of appeals has been

faced with a variety of fact situations involving disabled vehicles.

The court of appeals has found physical control where the vehicle had a flat tire, *State v. Woodward*, 408 N.W.2d 927 (Minn. App.1987); a dead battery, *Abeln v. Commissioner of Public Safety*, 413 N.W.2d 546 (Minn.App.1987); and where the car was stuck in a snow-filled ditch, *State v. Duemke*, 352 N.W.2d 427 (Minn.App.1984). The State stressed the disabilities in these three cases were all temporary disabilities. A flat tire can be changed; a dead battery can be jump-started; and a car can be towed from a snow-filled ditch.

The court of appeals in this appeal, however, relied on two of its prior decisions where "physical control" was not found. In *State v. Pazderski*, 352 N.W.2d 85 (Minn.App.1984), the defendant was found asleep in the front seat of his car parked in his driveway. Defendant claimed he had driven home but not gone inside the house because he wished to avoid a domestic dispute. Because he was at his destination and not going anywhere, the appeals panel reversed his conviction. In *Roberts v. Commissioner of Public Safety*, 371 N.W.2d 605 (Minn.App.1985), *review denied*, Oct. 11, 1985, the defendant, after passing out from drinking, had been placed by friends in the front seat of his car parked in a dance hall parking lot; the keys were left on the dashboard but the friends pulled the coil wire to the ignition so defendant could not drive off. The appeals panel affirmed the trial court's ruling that defendant was not in physical control of the vehicle. While the appeals panel noted that the car was mechanically inoperable, at least temporarily, the decision also suggests that the defendant had a passenger status because he had been placed in the car without his knowledge.

Both *Pazderski* and *Roberts* have been somewhat limited by subsequent court of appeals' decisions. *Pazderski* has been limited to cases where the defendant is in his or her driveway. When the vehicle is located elsewhere, the appeals court has found physical control because the intoxicated individual might proceed on his journey and attempt to get home. *See Martin v. Commissioner of Public Safety*, 358 N.W.2d 734, 737 (Minn.App.1984) (car located in front of a house, not his own, and defendant could at any time begin to drive); *Palme v. Commissioner of Public Safety*, 366 N.W.2d 343, 345 (Minn.App.1985) (defendant found asleep in pick-up truck next to a bar claimed his friend had put him there; keys on the seat next to the defendant, so defendant could at any time start the pick-up and attempt to go home), *review denied*, June 24, 1985. And as we have seen, both *Abeln* (dead battery) and *Woodward* (flat tire) suggest that mechanical inoperability as noted in *Roberts* (disconnected coil wire) may not be enough to exclude physical control. *See also State v. Thurmer*, 348 N.W.2d 776, 779 (Minn.App. 1984) (defendant admitted driving car found stuck in snow-filled ditch; court found physical control because keys were in the ignition and defendant admitted he drove the car there).

▪ Insofar as "physical control" refers to something other than "driving" or "operating," the foregoing cases suggest that physical control is meant to cover situations where an inebriated person is found in a parked vehicle under circumstances where the car, without too much difficulty, might again be started and become a source of danger to the operator, to others, or to property. In *Juncewski*, 308 N.W.2d at 320, we indicated that the purpose of the physical control offense is to act as a preventive measure to deter the drunk driver from again driving. The danger addressed by the physical control offense is the concern that the intoxicated person "could have at any time started the automobile and driven away." *Hughes v. State*, 535 P.2d 1023, 1024 (Okla.Cr.1975). Or as stated in *State v. Webb*, 78 Ariz. 8, 274 P.2d 338, 339 (1954), the purpose of the offense is to "enable the drunken driver to be apprehended before he strikes."

▪ Alcoholic behavior can be unpredictable. A person may get or be put into a car to "sleep it off," but then decide to drive away. It is, of course, no crime for an intoxicated person to be in a motor

vehicle as a passenger. A passenger, by definition, is someone who is merely along for the ride. When, however, only one person is found in or about a stopped car, the question arises whether that person is a passenger or a person in physical control of the motor vehicle. Mere presence in or about the vehicle is not enough for physical control; it is the overall situation that is determinative.

In most cases, the jury is asked to decide if the defendant was driving, operating, or was in physical control of a motor vehicle while under the influence of alcohol. This three-pronged charge is submitted even when the defendant is found in a stationary vehicle with no direct testimony—no eye witness, no admission by the defendant— that the defendant drove the vehicle to where it was found at rest. In such a case, there still may be circumstantial evidence from which the jury could find that defendant had driven the car to its resting place; and, because this driving is included within "physical control," the inebriated defendant may, with consistency, be found guilty of driving, operating or being in control of the motor vehicle. *See State v. Hughes,* 355 N.W.2d 500, 502 (Minn.App.1984), *review denied,* Jan. 2, 1985. But this is not all. Moreover, when it appears that the defendant drove the car to where it came to rest, this is also evidence that the defendant, when found in the parked car, was in physical control of the car while it was parked. *State v. Smelter,* 36 Wash.App. 439, 674 P.2d 690, 693 (1984); *State v. Duemke,* 352 N.W.2d 427, 430 (Minn.App. 1984).

In the case now before us, the charge of driving (the car into the ditch) was dismissed prior to jury submission. Although the trial court ruled that the evidence was insufficient to establish beyond a reasonable doubt that Starfield had driven the car into the ditch, this does not necessarily mean that Starfield was a passenger in her car as a matter of law. But even putting aside any remaining inference that Star-

field drove the car into the ditch, the jury could find beyond a reasonable doubt from the circumstantial evidence—Starfield behind the wheel, in her own car, keys in her pocket, towing assistance likely available— that Starfield was in physical control of the car when it was in the ditch.

This brings us, then, to the question of operability. There was evidence from which the jury could have found that the snow-stuck car was incapable of immediate self-powered mobility. While stuck in the ditch, the car was not a danger to anyone, and, arguably, whatever physical control Starfield had over the car was ineffectual and, therefore, noncriminal. Consequently, Starfield argues she cannot be convicted of a crime for sitting in a car incapable of going anywhere and a hazard to nobody. And while the State also charged Starfield with driving under the influence of alcohol, she points out it was unable to prove that charge, and this should end the matter.

■ The fact remains, however, that a car incapable of immediate self-propelled mobility may still be a potential traffic hazard, and it is this potential for harm, as we have seen, that the "physical control" offense is meant to encompass. The person in physical control may, while still inebriated, correct the disability and meander down the road.[1] Here, for example, Starfield might have enlisted the aid of a passerby to extricate her car from the ditch (indeed, such a driver came along after the deputies arrived) and, even if one of the tires was flat (we have only the son's word for this), the car could have been driven on the highway with the flat tire or the flat tire could have been changed. In other words, temporary inoperability does not necessarily preclude criminal liability. *See also State v. Smelter, supra* (car out of gas, but a gas station nearby).

Other courts have held, and we agree, that the state does not need to prove operability of the motor vehicle. *State v. Garber,* 587 A.2d 404 (Vt.1991); *Lathane v.*

---

1. Of course, a stationary, disabled vehicle, even if it cannot readily be rendered capable of movement, may be a hazard in its stationary, disabled condition. For example, a disabled car may protrude somewhat onto the roadway; or the car may be imbedded in a snow-filled ditch in such a way that running the motor creates a danger of asphyxiating the person inside.

*State*, 707 P.2d 941, 943 (Alaska App.1985); *City of Toledo v. Voyles*, 14 Ohio App.3d 419, 471 N.E.2d 823, 824 (1984). Operability does not appear in our statute as an element of physical control. One court at least has indicated that inoperability may, in certain circumstances, be treated as an affirmative defense to a prosecution for a physical control offense. *Jones v. State*, 510 So.2d 1147, 1149 (Fla. Dist.Ct.App. 1987). We do not, however, think that treating inoperability as an affirmative defense is appropriate either.

■ Drunk-driving cases, especially those where the officer comes upon a stationary car with an inebriated person inside, seem to provoke a remarkable variety of explanations to test the factfinder's credibility-determining powers. Inoperability or, more precisely, the nature and duration of any inoperability, is simply a factor or circumstance to be evaluated with all the surrounding facts and circumstances by the jury in determining whether the situation gives rise to physical control.[2]

In a case where the State is claiming "physical control" of a disabled motor vehicle, we think the standard JIG instruction on physical control might appropriately be supplemented by an instruction along the following lines:

In considering whether or not the defendant was in physical control of the motor vehicle while under the influence of alcohol, you may consider defendant's location in or by the vehicle, the location of the ignition keys, whether the defendant had been a passenger in the vehicle before it came to rest, who owned the vehicle, the extent to which the vehicle was inoperable, and whether the vehicle if inoperable might have been rendered operable so as to be a danger to persons or property. You may consider these as well as any other facts or circumstances bearing on whether or not the defendant was then in physical control of a motor vehicle which was or reasonably could

become a danger to persons or property while the defendant was under the influence of alcohol.

■ Ordinarily, instructions drawing attention to particular kinds of evidence should be avoided in criminal cases. *State v. Olson*, 482 N.W.2d 212 (Minn.1992). In this instance, however, directing the jury's attention in nonargumentative fashion to a number of relevant factors bearing on physical control could be helpful by providing focus to the arguments of counsel and the deliberations of the jurors. *Cf. Olson*, *supra*. An instruction along the foregoing lines should be given if requested in cases where inoperability is involved.

■ In this case, the defendant requested an instruction which would have been error to give. Operability of the motor vehicle is not an element of the crime of being in physical control of a motor vehicle while under the influence of alcohol, and the State did not—contrary to the requested instruction—have a duty to prove operability beyond a reasonable doubt. Neither must the State prove that the defendant was in the vehicle for the purpose of operating the motor vehicle, as defendant's instruction also requested. An intent to operate is not an element of the criminal offense; if it were, defendants found in a drunken stupor behind the wheel could argue they lacked any intent to move the vehicle. A drunken intent is highly problematic and too easily manipulated after the fact. Indeed, an attempt to make lack of intent an affirmative defense was defeated in the 1989 legislature. *See* S.F. 223, Journal of the Senate, p. 1633, for April 13, 1989.

Consequently, the trial court did not err in denying defendant's requested instruction. Nor can we say it was reversible error for the trial court not to have given a supplementary instruction on relevant facts to consider for physical control in the absence of counsel's request for the instruc-

**2.** Considering a motor vehicle's potential for operability will not, as the dissent suggests, require police officers to test-drive every car they stop, or, more to the point, every stopped car they come upon; nor is there any particular

need for automotive experts. Cases in which potential operability may be a factor are quite rare, and even in these rare cases it is the overall situation that is important.

tion. Under the standard JIG instruction that was given, the parties were free to argue, and did argue, the conflicting inferences to be drawn from the fact that defendant's car was stuck in the snow-filled ditch.

We reverse and reinstate the conviction.

Reversed.

TOMLJANOVICH, Justice (concurring in part and dissenting in part).

I concur in the majority's result but respectfully dissent as to one section of its opinion. Contrary to the majority's assertion, inoperability is never relevant to the issue of whether a defendant was in control of a motor vehicle. Operability is relevant to only one question: whether the thing at issue is, in fact, a motor vehicle.

The statute makes it a crime to "be in physical control of any motor vehicle * * * when the person is under the influence of alcohol." I would not read the word "operable" into the statute to permit the jury to require physical control of an operable motor vehicle.

Operability has nothing to do with control, and allowing the defense to raise it needlessly complicates what should be a straightforward determination. If defendants can claim, and juries can consider, inoperability, police officers will be forced to test drive every car they stop and parties will be forced to bring in automotive experts to testify. In the end, any trial involving this issue is what will be inoperable.

The real question being raised here is factual impossibility. The defense argument appears to be that a driver cannot possibly cause harm while in control of an inoperable vehicle. But factual impossibility is never a valid defense in a case like this one. C. Torcia, 1 *Wharton's Criminal Law* § 76 (14th ed. 1978).

I respectfully dissent from the court's conclusion that inoperability is potentially relevant.