Paul Martin SNYDER, Petitioner,
Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C4–92–1173.

Court of Appeals of Minnesota.

March 2, 1993.

Charles J. Lee, Red Wing, for petitioner, respondent.

Hubert H. Humphrey, III, Atty. Gen., Ronald S. Latz, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by PARKER, P.J., and KALITOWSKI and MULALLY, JJ.

OPINION

EDWARD D. MULALLY, Judge *.

The Commissioner of Public Safety appeals from an order that rescinds the revo-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

cation of the driving privileges of respondent Paul Martin Snyder. We affirm.

## FACTS

On December 4, 1991, at approximately 10–10:30 p.m., Snyder drove his car to the home of Rona Hagberg in Kenyon, Minnesota. At that time, Snyder and Hagberg were dating.

The two got into Snyder's car. Snyder drove a short distance, and parked along an unlit gravel road so that he and Hagberg could talk. Snyder turned off the engine. He remained in the driver's seat, while Hagberg was in the front passenger seat. In the next 30 to 45 minutes, Snyder consumed four to five cans of beer.

Shortly before 11:30 p.m., Snyder gave his car keys to Hagberg with the understanding that she would drive home. He exited the car and went over to the roadside to urinate. Hagberg remained in the passenger seat of the car.

Moments later, a police officer on routine patrol observed Snyder's car. Assuming there was a problem, he pulled alongside and attempted to speak with Hagberg through the driver's side window, which was down slightly. Due to the windy weather conditions that night, the officer could not hear what Hagberg was saying. When he got out of his squad car and walked around the rear of the car to speak to Hagberg, he noticed Snyder crouching near the passenger side of the car. Snyder then rose, and zipped up his pants.

Snyder denied that he was the driver of the car, and claimed that Hagberg was going to drive. As the officer was waiting for Hagberg to get the proof of insurance, he smelled alcohol inside the car. He searched the car, and found a number of unopened, and several empty, cans of beer.

Hagberg told the officer that she was not the driver of the car, that Snyder was the driver, and that Snyder had driven the car to that location approximately five minutes before the officer arrived. Hagberg provided a breath sample for a preliminary breath test (PBT), which indicated she had no alcohol in her breath.

Snyder again denied that he was the driver of the car. The officer testified Snyder claimed that he and Hagberg were going to switch as drivers, that she had been the passenger, and that she had not yet gotten into the driver's seat.

Based on Snyder's performance on several field sobriety tests, the officer determined Snyder was under the influence of alcohol. Snyder refused to provide a breath sample for the PBT.

Snyder was arrested for driving while under the influence, and his license was revoked. Following an implied consent hearing, the district court issued an order in which it made the following findings of fact:

1. In Goodhue County on December 4, 1991 at approximately 11:30 p.m., [a police officer] observed a vehicle parked on a gravel road and went to investigate. [The officer] saw [Snyder] outside of the car with another person in the passenger seat of the vehicle.

2. [The officer] determined that [Snyder] was intoxicated and found empty beer cans in the vehicle.

3. [Snyder] had driven the vehicle to the gravel road, but had done so while not under the influence of alcohol. He had given the keys to the other person in the car with the understanding that this person would do any further driving that evening.

4. [Snyder] refused to take a PBT. The other person took a PBT and passed. [Snyder] did reasonably well on field sobriety tests.

5. [Snyder] was properly given an implied consent advisory. He consented to a breath test. [Snyder's] breath registered a b.a.c. of .10.

6. [Snyder] admits that he had consumed four to five beers in the vehicle within thirty to fifty minutes before the arrival of [the officer].

Based on these findings, the district court concluded that the officer "did not have probable cause to believe [Snyder] was driving, operating, or in physical control of a motor vehicle while under the influence of alcohol."

## ISSUE

Did the district court err in rescinding the Commissioner's revocation of Snyder's driving privileges?

## ANALYSIS

■ In order to revoke a driver's license, the Commissioner must show not only that the arresting officer had probable cause to believe the driver was driving, operating, or in physical control of his vehicle while under the influence of alcohol,[1] but also that the driver was in such physical possession. *See, e.g., Llona v. Commissioner of Pub. Safety,* 389 N.W.2d 210, 212 (Minn. App.1986); *Roberts v. Commissioner of Pub. Safety,* 371 N.W.2d 605, 607–08 (Minn.App.1985), *pet. for rev. denied* (Minn. Oct. 11, 1985). These two issues may be raised as separate challenges to a revocation decision. *Id.*

■ 1. A trial court's determination on the issue of whether probable cause existed to request an alcohol concentration test under the Implied Consent Law is a mixed question of law and fact. *Clow v. Commissioner of Pub. Safety,* 362 N.W.2d 360, 363 (Minn.App.1985), *pet. for rev. denied* (Minn. Apr. 26, 1985). Once the facts have been found, the trial court must apply the law to determine if probable cause existed. *Id.* Thus, this court will not hesitate to reverse a trial court's conclusion that probable cause did not exist where the facts and circumstances warrant such a reversal. *See, e.g., id.* 362 N.W.2d at 363–64; *State v. Olson,* 342 N.W.2d 638, 641 (Minn.App. 1984).

■ A trial court should pay "great deference" to the officer's judgment on the issue of whether probable cause existed to request an alcohol concentration test. *Olson,* 342 N.W.2d at 640–41. When reviewing the issue of probable cause, the court must necessarily take into account the credibility of the witnesses, the consistency of the testimony, the opportunity of each witness to observe, the expertise or train-

ing of a witness, the strength of the observation, and the persuasive or probative value of the observation. *Clow,* 362 N.W.2d at 363.

■ From an examination of the district court's findings, it is clear that the court accepted the officer's testimony as accurate and credible. Based on Hagberg's statements to the officer, on the fact that Hagberg was in the passenger seat, and on the fact that the driver's seat was empty and Snyder was outside the car, the officer had probable cause to believe that Snyder had driven while intoxicated. The district court therefore erred in determining that probable cause did not exist in this case.

2. In his petition for judicial review, Snyder also asserted he was seeking rescission of the revocation because "he was not the operator of the motor vehicle at the time he was detained and arrested." While not ruled upon by the district court, a remand on the issue of whether Snyder was in actual physical control of the vehicle is not necessary; the district court made the factual findings necessary to decide the legal issue of actual physical control. *Cf. Berge v. Commissioner of Pub. Safety,* 374 N.W.2d 730, 732 (Minn.1985) (once trial court credits certain testimony as to facts relating to stop of vehicle, issue of validity of stop becomes issue of law).

■ Physical control is meant to cover situations where an intoxicated person is found in or about a parked car under circumstances where the car could be started and become a source of danger to the operator, others, or property. *State v. Starfield,* 481 N.W.2d 834, 837 (Minn.1992). However, there is nothing to preclude an intoxicated person from being in a vehicle as a passenger. *Id.* at 837–38. Thus, we do not believe physical control is intended to cover situations where an intoxicated person is a passenger, having relinquished control of the vehicle to a designated driver.

---

1. The district court found that the officer determined Snyder was intoxicated. Snyder does not dispute this finding on appeal.

In this case, Snyder admitted that he consumed four or five cans of beer while he was behind the steering wheel of his car and in possession of his keys. However, at some point before the police officer arrived, it is undisputed that he handed his keys to Hagberg so that she could drive home. Relinquishment of control of a vehicle to an unimpaired driver, by one who believes he/she is under the influence and unable to operate the vehicle safely, or the use of designated drivers, are policies to be commended and encouraged. Here, the trial court had the opportunity to hear and observe the witnesses, and assess their credibility. We believe that its findings of fact and conclusions of law as to the issue of whether Snyder was in physical control of the vehicle at the time of his detention and arrest are not clearly erroneous.

## DECISION

The district court's decision to rescind the Commissioner's revocation of Snyder's driving privileges is affirmed.

Affirmed.