*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0510**

Kayla Lashawn Berres, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent

**Filed February 23, 2015
Affirmed
Worke, Judge**

Kanabec County District Court
File Nos. 33-CV-13-341, 33-CR-13-350

Robert J. Foley, III, Anthony J. Larson, Nick P. Granath, Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, Rory C. Mattson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Worke, Judge; and Johnson, Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges the district court's denial of her petition to rescind her driver's license revocation. We affirm.

# FACTS

On October 23, 2013, Deputy Bailey Miller was summoned to a fast-food restaurant because an individual was sleeping in the lobby. When Deputy Miller arrived an employee informed her that the individual had moved to her vehicle. Deputy Miller observed appellant Kayla Lashawn Berres slumped over the center console. Deputy Miller made contact with Berres and detected the odor of alcohol. The car was not running and the keys were not in the ignition.

Deputy Miller asked Berres where she had come from. Berres told Deputy Miller that she drove from the bowling alley, had gone through the drive-through on her way home, and then parked her car so that she could use the restroom. Berres made no mention of anyone who was or had been with her. Deputy Miller performed field sobriety tests and then placed Berres under arrest. Berres was read the implied consent advisory and submitted to a breath test which showed an alcohol concentration of about .20.

Respondent Commissioner of Public Safety revoked Berres's driving privileges. At Berres's rescission hearing, she presented a witness named John Armstrong who testified that he received a call from Berres while she was still at the bowling alley that night. Berres asked him to drive her home. Armstrong went to the bowling alley and drove Berres's vehicle to the restaurant. After the two arrived, they got into an argument. Armstrong parked the vehicle, gave the keys to Berres and then walked away. Armstrong saw Berres walk into the restaurant as he departed.

2

Berres testified that she did not recall that someone had given her a ride from the bowling alley until after she was arrested and performed her own investigation. Berres did recall that Armstrong had left her at the restaurant. Berres did not fully remember her conversation with Deputy Miller. She recalled walking out of the restaurant, seeing law enforcement, and then going to her car to retrieve her cigarettes, which were in the center console. This, she explained, was why it appeared to Deputy Miller that she was slumped over the center console. Berres did not know where her keys were at the time Deputy Miller made contact, but she learned that she had left them in her purse in the restroom.

The district court denied Berres's requested rescission, concluding that she was in physical control of her vehicle. Berres appealed.

## D E C I S I O N

Berres argues that the district court erred in concluding that she was in physical control of her vehicle. The commissioner may revoke an individual's driver's license if she was in physical control of a vehicle and had an alcohol concentration greater than .08. Minn. Stat. § 169A.52, subd. 4(a) (2014). "Whether a person is in physical control of a motor vehicle for purposes of the implied-consent law is a mixed question of law and fact." *Snyder v. Comm'r of Pub. Safety*, 744 N.W.2d 19, 21-22 (Minn. App. 2008). The district court's findings of fact will not be set aside unless clearly erroneous. *Id.* at 22. Application of those facts to the question of physical control is one of law, reviewed de novo. *Id.*

"[T]he [c]ommissioner must show by a fair preponderance of the evidence that the person was in physical control of the vehicle." *Roberts v. Comm'r of Pub. Safety*, 371

3

N.W.2d 605, 607 (Minn. App. 1985), *review denied* (Minn. Oct. 11, 1985). "[A] person is in physical control of a vehicle if [s]he has the means to initiate any movement of that vehicle, and [s]he is in close proximity to the operating controls of the vehicle." *State v. Fleck*, 777 N.W.2d 233, 236 (Minn. 2010). Physical control is "given the broadest possible effect . . . to deter inebriated persons from getting into vehicles except as passengers." *State v. Starfield*, 481 N.W.2d 834, 836 (Minn. 1992) (quotation omitted). "Mere presence in or about the vehicle is not enough for physical control; it is the overall situation that is determinative." *Id*. at 838. "We consider a number of factors in determining whether a person is in physical control of a vehicle, including: the person's location in proximity to the vehicle; the location of the keys; whether the person was a passenger in the vehicle; who owned the vehicle; and the vehicle's operability." *Fleck*, 777 N.W.2d at 236.

Berres first contends that the district court's conclusion that she was in physical control of her vehicle because she had "dominion" and "control" inappropriately interpreted statutory requirements. She asserts that these terms are associated with analysis of a possessory interest in property but are not appropriate in this context. However, our caselaw uses these precise words to describe physical control of a vehicle. *State v. Duemke*, 352 N.W.2d 427, 432 (Minn. App. 1984) ("The phrase 'physical control' means being in a position to exercise dominion or control over the vehicle."). Furthermore, the district court concluded that Berres had dominion and control because of the location of the keys, her proximity to the vehicle, and the absence of anyone else to drive in her stead. These are considerations common to caselaw. *See, e.g.*, *Fleck*, 777

4

N.W.2d at 236 (describing factors involved in an analysis of physical control, including the location of keys, proximity to the vehicle, and whether the person is a passenger); *Starfield*, 481 N.W.2d at 837-39 (same, and discussing situations in which only one person is found in or near a vehicle); *see also Snyder*, 744 N.W.2d at 22-23 (citing cases discussing similar factors).

Berres next argues that because she called Armstrong to arrange a ride home she had no intent to operate her vehicle. But "[i]ntent to operate does not have to be shown in order to find that an individual is in physical control." *Snyder*, 744 N.W.2d at 22.

She further argues that an affirmance in this case would expose lawful conduct to criminal prosecution and license revocation. Berres posits a hypothetical scenario in which anyone possessing keys on her person at a bar with a parking lot would run afoul of the law. Such a situation is far removed from the facts here, and each case of physical control is analyzed according to its unique circumstances. *See Starfield*, 481 N.W.2d at 838 ("[I]t is the overall situation that is determinative."). Also, our law is concerned with inebriated persons becoming drivers, not passengers. *See id.* at 837-38 ("It is . . . no crime for an intoxicated person to be . . . a passenger. A passenger . . . is someone who is merely along for the ride. When, however, only one person is found . . . , the question arises whether that person is a passenger or a person in physical control of the motor vehicle."). If the occupants of Berres's hypothetical bar were passengers, they would face little danger of prosecution or license revocation.

Lastly, Berres argues that the district court's statement that she was "likely" to drive is clearly erroneous. Berres labels this a "finding," but this word is pulled from a

5

sentence contained within a portion of the district court's order which is simply a summarizing paragraph: "She had the means to complete her journey home and was likely to do so given that she was parked at a fast food restaurant and without a place to stay for the night." Berres offers no support for the proposition that likelihood of driving is needed to reach a conclusion of physical control. Thus, even if disregarded as clearly erroneous, the district court's use of this word does not diminish the several pages of thorough and well-cited analysis on physical control that precede it, nor the district court's ultimate conclusion.

Berres's proffered arguments are unpersuasive. She was found inebriated in the driver's seat of her operable car, at a location on the way to her home, with the keys a brief walk away. No one else was present to indicate that she might simply have been a passenger. Physical control is "meant to cover situations where an inebriated person is found in a parked vehicle under circumstances where the car, without too much difficulty, might again be started and become a source of danger to the operator, to others, or to property." *Id.* at 837. The district court correctly concluded that Berres was in physical control of the vehicle.

**Affirmed.**[1]

---

[1] The commissioner argued that the district court's finding that Berres did not drive her vehicle was clearly erroneous. This argument is rendered moot due to our disposition on the issue of physical control.