*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1451**

Jennifer Leu, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed March 25, 2024**
**Reversed**
**Larkin, Judge**

Mahnomen County District Court
File No. 44-CV-22-805

Richard C. Kenly, Kenly Law Office, Backus, Minnesota (for appellant)

Keith Ellison, Attorney General, Cory J. Marsolek, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Ross, Judge; and Bjorkman, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

Appellant challenges the district court's order sustaining respondent's revocation of her license to drive. Because the circumstances surrounding her arrest for driving while impaired did not result in probable cause to believe that appellant was in physical control of the vehicle in which she had been a known passenger, we reverse the revocation.

**DECISION**

Respondent Commissioner of Public Safety revoked appellant Jennifer Leu's license to drive after she was arrested for being in physical control of a motor vehicle in violation of Minnesota's law against driving while impaired and subsequent chemical testing indicated that she had an alcohol concentration over the legal limit. Leu petitioned for judicial review of the license revocation. The district court sustained the revocation after a hearing on Leu's petition. Leu appeals, arguing that the revocation was improper because there was no probable cause to believe that she was in physical control of a vehicle under the standard applicable to a "known passenger."

Under Minnesota's implied-consent law:

> Upon certification by [a] peace officer that there existed probable cause to believe [a] person had been driving, operating, *or in physical control* of a motor vehicle in violation of section 169A.20 (driving while impaired) and that the person submitted to a test and the test results indicate an alcohol concentration of 0.08 or more . . . , then the commissioner shall revoke the person's license or permit to drive, or nonresident operating privilege.

Minn. Stat. § 169A.52, subd. 4(a) (2022) (emphasis added); *see* Minn. Stat. § 169A.50 (2022) ("Sections 169A.50 to 169A.53 may be cited as the Implied Consent Law.").

> Police have probable cause to believe a person is in physical control of a vehicle while under the influence of alcohol when, based on the totality of the circumstances, there is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the person was in physical control.

*Shane v. Comm'r of Pub. Safety*, 587 N.W.2d 639, 641 (Minn. 1998) (quotation omitted).

If the facts of a case are undisputed, then probable cause is a question of law that we review de novo. *Id.*

The term "physical control" is more comprehensive than the terms "drive" and "operate." *State v. Harris*, 202 N.W.2d 878, 881 (Minn. 1972). The term "physical control" should be given "the broadest possible effect" to deter inebriated persons from getting into vehicles except as passengers. *State, Dep't of Pub. Safety v. Juncewski*, 308 N.W.2d 316, 319 (Minn. 1981) (quotation omitted). Generally, physical control is meant to cover situations in which "an inebriated person is found in a parked vehicle under circumstances where the car, without too much difficulty, might again be started and become a source of danger to the operator, to others, or to property." *State v. Starfield*, 481 N.W.2d 834, 837 (Minn. 1992).

However,

> [i]t is, of course, no crime for an intoxicated person to be in a motor vehicle as a passenger. A passenger, by definition, is someone who is merely along for the ride. When, however, only one person is found in or about a stopped car, the question arises whether that person is a passenger or a person in physical control of the motor vehicle. Mere presence in or about the vehicle is not enough for physical control; it is the overall situation that is determinative.

*Id.* at 837-38.

Thus, the supreme court has articulated a different physical-control standard for a "known passenger" in *Shane*. 587 N.W.2d at 639. Under that standard:

> [F]or a police officer to have probable cause to believe a known passenger is in physical control of a motor vehicle, the officer must have reason to believe that the passenger has or is about

3

to take some action that makes the motor vehicle a source of danger to themselves, to others, or to property.

*Id.*

In *Shane*, the sole issue was whether there was probable cause to believe that Shane was in physical control of a motor vehicle, specifically, a Bronco. *Id.* at 640-41. In analyzing that issue, the supreme court noted that unlike the situations in previous physical-control cases it had considered, the police did not find Shane inebriated and alone in a vehicle. *Id.* at 641. Instead, "Shane was a passenger in a vehicle being driven by someone else" and "[b]y definition, a passenger is merely along for the ride and is not in physical control of the vehicle." *Id.* The supreme court therefore concluded that "at the time of the initial stop, the police did not have any basis to believe that Shane was in physical control of the vehicle." *Id.* In so concluding, the supreme court rejected the state's argument that "Shane renounced his original status as a bona fide passenger by actively manipulating the vehicle's controls." *Id.* The supreme court explained:

> The problem presented by the facts of this case is that an inebriated passenger, ordered by the police to remain in a vehicle that has its engine running, is always going to be in a position without too much difficulty to become a source of danger to themselves, to others, or to property. Thus, in order for a police officer to have probable cause to believe a known passenger is in physical control of a motor vehicle, the officer must have reason to believe that the passenger has or is about to take some action that makes the motor vehicle a source of danger to themselves, to others, or to property. The record here establishes that the only action the officers who stopped the Bronco observed was that Shane, after being ordered to remain in the Bronco, leaned over from the passenger seat and evidently touched the Bronco's gas pedal briefly, causing its engine speed to increase and a visible increase in the exhaust coming from its tail pipe. There is no evidence in the record

4

that Shane did anything else. There is no evidence, and the officers who stopped the Bronco have not alleged, that Shane put himself in a position to move the Bronco or that he caused the Bronco to move. Further, the record is clear that Shane did not move to the driver's seat, touch the steering wheel, or put the Bronco in gear. Nor is there any evidence, and the officers have not alleged, that Shane made any attempt to do these things.

We conclude, based on what the two police officers observed during the stop, that the officers had no reason to believe that Shane had or was about to take some action that would make the Bronco a source of danger to himself, to others, or to property. The mere act of a known passenger leaning over and touching a vehicle's gas pedal, without more, is not an action that makes the vehicle a source of danger to the passenger, to others, or to property. To the extent the police officers were concerned about what Shane might do after he sat back up in the passenger seat, removing him from the vehicle eliminated any possibility of Shane turning the Bronco into a source of danger. Therefore, under the circumstances of this case, the police officers did not have probable cause to believe Shane was in physical control of the Bronco.

*Id*. at 641-42 (footnote omitted) (quotation omitted).

The circumstances of this case were established at the hearing on Leu's petition for judicial review. Leu was the front seat passenger in a pickup truck that her husband was driving. A police officer stopped the truck and suspected that Leu's husband was impaired. After conducting field sobriety tests on Leu's husband, the officer arrested him and directed Leu to remain in the truck. The truck's engine remained running. At some point, Leu got out of the passenger compartment of the truck and moved to the driver's seat. However, she did not close the driver's door. Instead, Leu sat sideways on the driver's seat, with her feet hanging out of the truck. When the officer observed Leu in that position, she was on her cell phone and explained to the officer that she was requesting a ride home from the

5

scene. Leu exited the truck. Then, she reached inside the truck, switched off the ignition, and put the keys in her pocket. As the officer placed Leu under arrest, a third party arrived to take possession of the truck.

On these facts, there is no dispute that Leu was a known passenger at the time of the stop. Thus, to sustain her license revocation based on "physical control," we must conclude that there was probable cause to believe Leu had or was about to take some action that would have made the motor vehicle a source of danger to herself, to others, or to property.[1] *See id.* at 639. In considering this issue, we compare the facts here to those in *Shane*.

After the driver in *Shane* was removed from the vehicle, Shane asked the police officer if he could drive the vehicle home. *Id.* at 640. Later, Shane touched the vehicle's gas pedal from his position in the passenger seat while the vehicle was running, causing the engine to "rev up" and the exhaust from the vehicle to increase. *Id.* at 642. Yet, the supreme court concluded that the officers "had no reason to believe that Shane had or was about to take some action that would make the [vehicle] a source of danger," stating, "[t]he mere act of a known passenger leaning over and touching a vehicle's gas pedal, without more, is not an action that makes the vehicle a source of danger." *Id.* The *Shane* court said that the circumstances were inadequate to establish "physical control" because Shane did not put himself in a position to move the vehicle. *Id.* The supreme court noted that Shane

---

[1] Leu admitted to the officer that she was in control of the motor vehicle and that she had been drinking that night. Because "physical control" is a legal term of art and we determine the issue of "physical control" de novo, Leu's admission is not determinative. *See Shane*, 587 N.W.2d at 641 (providing for de novo review of a probable-cause determination if the underlying facts are undisputed).

did not cause the vehicle to move, did not move to the driver's seat, did not touch the steering wheel, and did not put the vehicle into gear. *Id.* Nor was there any evidence that Shane attempted to do those things. *Id.* Thus, the officers did not have probable cause to believe that Shane was in physical control of the vehicle. *Id.*

When compared to the circumstances in *Shane*, the circumstances here provide even less reason to believe that Leu had taken or was about to take some action to make the truck a danger to herself, others, or property. Like Shane, Leu did not put herself in a position to move the truck, and she did not cause the truck to move. Although Leu moved to the driver's seat, she did not sit in a position conducive to driving. Instead, she sat facing out the driver's door with her feet outside of the truck, where they were not in contact with the truck's gas and brake pedals. Unlike Shane, Leu did not manipulate the gas pedal. Leu operated only the truck's ignition switch, and she did so only to turn off the truck's engine. Next, she removed the keys from the truck. Those acts are inconsistent with an attempt to move the truck. Finally, unlike Shane, Leu did not ask for permission to drive the truck. Instead, she attempted to make arrangements for a ride home, and a third party arrived and took custody of the truck before the police officer cleared the scene. When considered in their totality, these circumstances do not suggest that Leu had taken or was about to take some action to make the truck a danger to herself, others, or property.

The commissioner argues that Leu "relinquished her passenger status" by moving to and remaining in the driver's seat while the truck's engine was running and its keys were in the ignition, noting that Leu's actions put her in close proximity to the truck's operating controls and that she had the means to initiate movement of the truck.

7

"A passenger, by definition, is someone who is merely along for the ride." *Starfield*, 481 N.W.2d at 838. In *Shane*, the supreme court rejected the state's argument that "Shane renounced his original status as a bona fide passenger by actively manipulating the vehicle's controls." 587 N.W.2d at 641. When compared to the circumstances in *Shane*, the circumstances here do not provide reason to believe Leu relinquished her passenger status. Unlike Shane, Leu did not ask the officer if she could drive the truck home. Instead, she called her sister for a ride home, and a third party arrived to take possession of the truck while the officer was arresting Leu. Leu's actions indicate that she remained "merely along for the ride." *Id*.

Because Leu was a known passenger and the totality of the circumstances do not indicate that she had taken or was about to take some action to make the truck a source of danger, there was no probable cause to believe that she was in physical control of the truck. We therefore reverse the commissioner's revocation of Leu's license to drive.

**Reversed.**